## DAME *v.* DAME.

The actions of replevin and detinue, as remedies for injuries, considered.

The rule of the common law was, that replevin could only be maintained where the original taking was tortious.

To this general rule there was at common law one exception; where cattle were distrained damage feasant, and before impounding sufficient amends were tendered; and our statute has made some other exceptions.

Aside from these exceptional cases, the rule of the common law, before stated, is in force in this State.

The action of detinue can be maintained in this State to recover personal property *in specie*, where the property came rightfully into the defendant's possession, but has been wrongfully detained.

Whether it may not be maintained in any case of wrongful detention without regard to the character of the original possession, *Quœre*?

THIS was an action of detinue, brought to recover a house and barn alleged to be the property of the plaintiff, and situated on the land of the defendant, in Farmington, in said county, all of which is fully set forth in the plaintiff's declaration, which is as follows :

"In a plea of detinue for that whereas the plaintiff heretofore, to wit, on the first day of July, 1856, at Farmington aforesaid, was lawfully possessed of a certain house and a certain barn, both situated on the land of the said Daniel Dame, being the house built by the plaintiff in the year 1842, said house being about thirty-six feet long and about twenty-six feet wide, and one story and one quarter high, and of the value of $300 ; and said barn being about twenty-four feet long and about twenty feet wide, and of the value of $200, situated between the house of Eleazer Rand and the house now owned by Benjamin Chesley, on the left hand side of the road leading from the Bay road, so called, to the Ten Rod road, so called, as one goes toward the Ten Rod road, as of his own house and barn, and being so possessed, the said plaintiff afterward, to wit, on the third day of July, 1856, casually lost the same out of his possession, which thereafterward, to wit, on the same day, came into the hands and possession of the said Daniel Dame, by finding ; and the plaintiff further saith, that although the said Daniel Dame well knew that the said house and barn were the proper house and barn of the plaintiff, and although requested by the said plaintiff, to wit, at said Farmington, on the nineteenth day of May, 1860, to deliver the same to the plaintiff, yet the said Daniel Dame hath not delivered up the said house and barn to the plaintiff, but wholly refuses so to do, and still unlawfully detains the same."

To this declaration the defendant filed a general demurrer, and the plaintiff joined in demurrer ; and the question of law was reserved.

*L. Bell*, for the plaintiff.

*Sanborn*, for the defendant.

SARGENT, J. The only question here raised is whether in this State an action of detinue can be maintained. It is claimed by the defendant that this form of action was never introduced into this

State, or if it ever has been used or authorized here, that it has from recent entire disuse become obsolete so that it can not now be maintained.

This action was early held to be an appropriate remedy in a certain class of cases. It would seem that the original distinction between replevin and detinue was very similar to that between trespass and trover. Trespass *de bonis asportatis* was brought, not to recover the identical thing taken, but damages for the illegal taking and loss of the same, when such taking was unjust and unlawful, while trover was brought for the unjust detention and conversion of property where the original taking was lawful and proper.

So replevin was originally brought to recover the possession of a chattel *in specie* when the original taking was wrongful, and detinue to recover the article *in specie* when the original taking was lawful. 3 Black. Com. 144–152. Hence we find that the form of the declaration in trover and detinue are similar, it being alleged in both that the property came to the hands and possession of the defendant by finding. To be sure Blackstone says that replevin can be maintained only in one instance of an unlawful taking, to wit, that of an unlawful distress. 3 Black. Com. 145. However this may have been in early times, when personal property was of but small consequence, and when legal remedies were mainly if not solely sought to acquire possession of real estate, or to enforce some right connected therewith, or to collect the rents chargeable thereon, yet in modern times it is held that the law is otherwise, and numerous authorities of the greatest weight lay it down that this action lies in all cases of illegal taking.

Chitty says, by replevin the owner of goods unjustly taken and detained from him, may recover possession thereof. It is principally used in cases of distress, but it seems that it may be brought in any case where the owner has goods taken from him by another. 1 Chit. Pl. 162. And again, "It has been said that replevin lies only in one instance of an unlawful taking: namely, that of an unlawful distress of cattle, damage feasant, or of chattels for rent in arrears; but as before observed, it appears that this action is not thus limited, and if goods be taken illegally, though not as a distress, replevin may be supported." 1 Chit. Pl. 164, and authorities cited. 2 Saund. Pl. & Ev. 760; 2 Wheat. Selw. N. P. 1194. Replevin was generally a co-extensive remedy with trespass *de bonis asportatis*. *Pangburn* v. *Patridge*, 7 Johns. 143, and authorities cited. *Thompson* v. *Button*, 14 Johns. 87.

There is one exception stated by Blackstone (vol. 3, 151), where he says, "If I distrain another's cattle damage feasant, and before they are impounded he tenders me sufficient amends, now, though the original taking was lawful, my subsequent detainment of them, after tender of amends, is wrongful, and he shall have an action of replevin against me to recover them." But that this is an exception to the general rule would seem evident from the manner and position in which it is stated. On page 145, an unlawful taking is stated as the first injury to the right of personal property or possession, for which the remedy is by action of replevin. On page 151,

he speaks of the second injury, which is an unjust detainer of another's goods when the original taking was lawful, for which the remedy in all cases stated, with the single exception above mentioned, is either detinue or trover.   Now the learned commentator cites as his authority for the exception above named, Fitzherbert's Nat. Brev. 69, where the doctrine is stated thus :   "If a man take cattle for damage feasant, and the other tenders him amends and he refuseth it, &c., now if he sueth a replevin for the cattle, he shall recover damages only for the detaining of them, and not for the taking of them, for that the same was lawful, therefore no return shall lie."   Baron Gilbert, in his treatise on distresses and replevin, says, this is the *only* instance in which replevin lies where the original taking was not tortious.   Hammond (in his Nisi Prius 334) says the same, and assigns the reason, namely, "that replevin is the proper action to try all questions arising out of a distress." Here is the cause why this single exception to the general rule was made, because this was the remedy so universally applied in all cases of distress, and so seldom in any other case, that Blackstone (erroneously) lays it down that it is applicable only there ; it was held, therefore, as a matter of convenience in practice that it should be extended to cover all cases of distress, even though in a single instance it should thus be carried beyond its original and appropriate limits.

With this single exception the common law rule is believed to be uniform that replevin does not lie unless the original taking was unlawful in fact, or made so in law by relation, under such circumstances as would have made the taking a trespass *ab initio*.   Our statute makes other exceptions.   *Kimball* v. *Adams*, 3 N. H. 182. To sustain these views, see, in addition, Com. Dig., Replevin, A ; Buller's N. P. 52 ; 3 Wooddeson's Lectures 219 ; 2 Rolle's Abr. 441 ; Lord Redesdale in Ex parte Mason, 1 Sch. & Lef. 320, note ;   and also in Ex parte Chamberlain, 1 Sch. & Lef. 322 ; and in *Shannon* v. *Shannon*, 1 Sch. & Lef. 324 ;   7 Johns. 140 ; Story's Pl. 422, note ; *Osgood* v. *Green*, 30 N. H. 210 ;   *Gardner* v. *Campbell*, 15 Johns. 401.

But we find in different States that these actions have been generally regulated by statute and made to apply often to very different uses and purposes from those for which they were originally designed.   To be sure we find in all the States, perhaps, the actions of trespass and trover retained, trover being generally extended in practice, so as to cover all cases of wrongful detention and conversion, without regard to the fact as to whether the original taking were legal or illegal ; but we find that the actions of replevin and detinue have met with very unequal favor in the different States.

In Massachusetts, it has been held that replevin may be maintained in all cases of wrongful detention of the plaintiff's goods, although the original taking may have been justifiable.   *Badger* v. *Phinney*, 15 Mass. 359 ; *Baker* v. *Fales*, 16 Mass. 147 ; *Marston* v. *Baldwin*, 17 Mass. 606 ; and in that State, too, it is held that detinue is obsolete.   *Baker* v. *Fales*, 16 Mass. 154 ; Colby's Prac., and Howes' Prac., Detinue.   But these decisions in Massachusetts, so far as they claim to rest upon the common law, have been so often

and so seriously questioned, and are opposed by such an over-whelming weight of authority, both English and American, that they may well be considered as having very little weight upon the question. See argument of Webster and Metcalf, in *Baker* v. *Fales* (page 148), and authorities cited; and, also, the numerous notes by the editor, and authorities cited upon this case of *Baker* v. *Fales*, in the recent editions of Massachusetts Reports; and particularly, note 23, upon the action of detinue. See also Wheat. Selw. N. P. 1194, and note and authorities.

But it is said that these decisions in Massachusetts are authorized by their statute; and if that were so, they would stand well enough, whether they accord with the common law or not. *Mellen,* C. J., in *Seaver* v. *Dingley,* 4 Greenl. 315, in speaking of these Massachusetts cases, says, that the court, after mature consideration, decided " that whatever might be the strict principles of the common law, the statute of 1789 had so altered·the common law, that an action of replevin may be maintained in case of an unlawful detention, though the taking was not tortious and unlawful." But even this position is disputed, and it is claimed, with apparent reason, that these decisions can not be sustained either upon the principles of the common law or upon the statute of that State. See notes 36 and 37 to *Baker* v. *Fales,* and authorities cited, where it is said, that neither the form of the writ, as prescribed in that State, nor their statute " give any countenance to the notion that replevin may be maintained for an unlawful detention ; but, on the contrary, extend only to cases of supposed unlawful taking." And, also, " that it is quite clear that at the common law no action of replevin could be maintained in this case."

Judge *Story* also seems to doubt whether these decisions in Massachusetts can stand even upon the statute of that State, and he does not hesitate to pronounce their doctrines as innovations upon the common law (Story's Pl. 442, note), where, in speaking of the doctrine that replevin may be maintained for goods unlawfully detained, although there may have been no tortious taking, he says, " this innovation on the common law, whether attributable to the statute or to the construction given to it, is to be regretted. The gist of the action is altered. It is no longer an unlawful taking, but an unlawful detention. The general issue, *non cepit,* though it can hardly be overruled as a good plea in replevin, has ceased to be a logical defense; indeed is no more to the purpose than *nil debet,* in assumpsit. It unsettles former decisions, unless some exceptions are set up without any other reason than a desire to avoid overruling former cases. Thus, it was formerly held that replevin would not lie on a bailment by the plaintiff; but if replevin will lie in all cases of unlawful detention, then it may be maintained in many cases of·bailment; and, lastly, it has destroyed the analogy between the actions of trespass and replevin, where it existed before."

In Pennsylvania, it was decided at an early day that replevin would lie wherever one man claimed goods in the possession of another, no matter how the possession was acquired. But in that

State the action of replevin is authorized and regulated only by statute. *Wallace* v. *Lawrence*, 1 Dall. 157. And the law continues the same. *Staughton* v. *Rappalo*, 3 S. & R. 562; *Keite* v. *Boyd*, 16 S. & R. 300. There could of course be little necessity for the action of detinue in that case.

In Virginia, it has been held that at common law replevin lay in all cases where goods were unlawfully taken. And this was the law in that State till 1823, when an act of the legislature confined the writ to the case of distress for rent. *Vaiden* v. *Bell*, 3 Randolph 448. In that State we find the action of detinue in very common use, as it is believed to be in all the southern and some of the western States.

In South-Carolina, while detinue was in common use, it is said in *Byrd* v. *O'Harlin*, 1 Rep. Con. Ct. 401, that it is not decided in that State whether replevin will lie in any other case than that of a distress for rent.

So in Connecticut, while it is admitted that by the English authorities, as well as those of some of the contiguous States, replevin lies for any tortious or unlawful taking of goods and chattels, yet it is held that, under their statute, it lies only in cases of attachment and distress. *Watson* v. *Watson*, 9 Conn. 140; S. C. 10 Conn. 75.

In New-York, previous to their Revised Statutes, they adhered strictly to the common law distinction between replevin and detinue, and both actions were used. See 7 Johns. 140; 10 Johns. 373; 14 Johns. 87, and 15 Johns. 402, before cited, which were cases of replevin; and *Todd* v. *Crookshanks*, 3 Johns. 432, which was detinue. But by their Revised Statutes (vol. 2, 553), the action of detinue was abolished, and the action of replevin was made, by express provision of law, to cover the same ground, or nearly so, that detinue had before covered.

But in North-Carolina, on the other hand, it is held that detinue lies in every case in which the property is wrongfully detained, without regard to the manner in which the defendant acquired possession. *Johnson* v. *Preston*, Cameron & Norwood 464.

It is said in 3 Black. Com. 151, that there is one disadvantage which attends this action (detinue): namely, that the defendant is herein permitted to wage his law, that is, to exculpate himself by oath, and thereby defeat the plaintiff in his remedy, and that for this reason the action itself is much disused, and has given place to the action of trover. See, also, Bac. Abr., Detinue. But the 3 and 4 Wm. IV, ch. 42, sec. 13, abolished the wage of law in all cases; since which, this action has been much in use in England, and is said to be a very advantageous remedy, especially where it is material to embrace in the same action with a count in detinue, another count in debt, for a money demand as due upon a contract. 1 Chit. Pl. 121 and 125.

It does not seem to be clearly settled upon authority, whether the action of detinue should be confined to those cases where the possession was at first rightful, and only the detention wrongful, or whether that remedy, like trover, should be extended to all cases

where the detention is wrongful, without regard to the quality of the original possession. The earlier authorities all favor the former view. Lord Coke says, " that detinue lyeth where any man comes to goods either by delivery or finding." Coke Litt. 286, b. Blackstone lays down this rule, that in order to maintain detinue the first point to be proved is, that the defendant came lawfully into possession of the goods, as either by delivery to him or by finding them. 3 Bl. Com. 151. Bac. Ab., Detinue; Wheat. Selw. N. P. 665.

But it is said by Chitty (1 Chit. Pl. 123) that it is a common doctrine in the books, that this action can not be supported if the defendant took the goods tortiously; but he pronounces the reasoning upon which that opinion is founded as fallacious, and holds that it may be maintained in any case where the detention was wrongful, without regard to the manner in which the defendant acquired possession. And while there would seem to be no good reason for enlarging the remedy by replevin, any more than there is that of trespass *de bonis;* yet it may well admit of a *quære* whether, as a matter of convenience in practice, and not inconsistently with principle, the action of detinue should not be so far enlarged beyond its original limits, as to keep pace with its kindred action of trover.

It is alleged that detinue has never been used or authorized in this State, and that replevin, trespass, and trover, afford ample remedies for all cases and classes of injuries. But trespass and trover are no substitute for detinue, for they only give damages for the goods taken or converted, without giving the party any chance to recover the chattel *in specie.* In regard to replevin, we understand that the common law is in force here, and that this action only lies in case of a wrongful taking in fact, or by intendment of law with the single common law exception of cases of cattle taken damage feasant, when amends are tendered before impounding, and other exceptions made by our statute in case of animals impounded, where it is held that it lies for a wrongful detention as well as a wrongful taking; *Kimball* v. *Adams,* 3 N. H., *ante;* but it must be against the person impounding, and can not be against the pound-keeper while the creatures are in his legal custody; *Bills* v. *Kinson,* 21 N. H. 448, where it is said that our statute has added to the causes for which this action may be instituted at common law, not only in the above case of animals impounded, but in case of goods attached on mesne process, when claimed by a third person, and in case of goods exempt from attachment. Rev. Stat., ch. 204, secs. 1, 2 and 3; Comp. Laws 520.

In accordance with these views is the form of the writ prescribed by law in the action of replevin (Rev. Stat., ch. 182, sec. 14; Comp. Laws 464), commanding the sheriff to replevy the goods belonging to A. P., of, &c., "wrongfully taken and detained," as it is said, &c. It would seem that this form embraces the common law, as nearly as may be, as stated in the English cases, replevin there being held to be the proper remedy in cases where property has been wrongfully taken and detained, whether as a distress or in any other way.

Replevin then does not encroach upon the common law ground of detinue, but leaves all that ground for the application of that remedy. It is only when replevin is carried beyond the common law limit, as in Massachusetts, by the court, and as it is in some States, as in New-York, by statute, that it can be said at all to supersede the necessity of detinue as a remedy where the original taking was lawful, and it is desired to recover the thing detained, *in specie.*

Nor do we find our statutes silent concerning the action of detinue. In the statute of limitations of 1791, detinue is twice mentioned and enumerated with trespass, trover, and replevin, and the time of limitation is fixed for each. N. H. Laws of 1815, 164, and 165. In the later statute of limitations, passed in 1825, we find similar provisions, and the same enumeration of actions, in which detinue is twice repeated, as before. N. H. Laws of 1830, 76. And in the Revised Statutes, after specifying that certain actions, such as for words, &c., shall be brought within two years, it is provided, that all other personal actions shall be brought in six years. Rev. Stat., ch. 181, secs. 3 and 4. Although detinue is not here enumerated specifically, yet the same is true of trover, trespass, debt, and all other actions having the same term of limitation.

It would seem that detinue was a remedy as fully recognized by our laws, and provided for as specifically as any of the other forms of personal actions. Nor is its place superseded by any other form of action. There are also good and sufficient reasons why it should be used, even if it were a concurrent remedy with replevin. In the latter, the plaintiff resumes the property in the first instance, and if he does not prevail, he must pay the defendant the value of the property, as by our practice there is no judgment for a return. *Bell* v. *Bartlett,* 7 N. H. 188. But in detinue, though the claim be to recover the specific chattel, yet it is not taken from the hands of the defendant till the right is determined, and the plaintiff takes his property on his execution. No bonds are required.

Detinue may also be joined with debt in the same declaration, which, in a large class of cases, is a decided advantage. It may also be brought for several articles, part of which are in existence, and can be recovered, and a part of which may have been converted, conveyed away, or destroyed; as the judgment in detinue is in the alternative, first, that the plaintiff do recover the goods in question specifically; or, secondly, if the plaintiff can not have the goods, that he recover the value thereof, and his damages for the detention.

The jury must therefore find the value not only of all the goods in the aggregate, but of each article separately, so that the plaintiff may have all that can be found of his property *in specie,* and for the balance, whatever it may prove to be, he may recover his damages, and this all in one suit and by a single judgment and execution. 1 Wheat. Selw. N. P. 667 ; Saund. Pl. and Ev., *ante.*

The difference in the course of proceedings, in the two cases (replevin and detinue), results naturally from the different injuries for the redress of which these remedies were invented. Where the taking was illegal and wrongful, the redress was by replevin, in

which the possession of the property was immediately returned to the party from whom it had been thus wrongfully taken; and the parties were then left to determine their several rights. But where the possession was legally and rightfully obtained, as by a bailment, or a finding, but the further detention was claimed to be wrongful, the plaintiff was not allowed to take the property in any summary manner from the hands of the defendant, to whom, perhaps, he had himself committed it; but he must first try his title and establish his right, and if he proved the detention to be wrongful, he then recovered his goods.

We think, then, that there are sufficient grounds, both upon the statute and upon authority and reason, as well as convenience, for holding that detinue in this State can be maintained.

*The demurrer is overruled.*