BAKER *v.* CHASE.     { DECEMBER 9, 1874.     55  61
                                                71 383

In order that the title to a personal chattel pass by operation of the statute of limitations, there must at least be some use or appropriation of it, or some act of dominion over it, inconsistent with an absolute right of property in the owner, and such as would lay the foundation of an action for its recovery.

In 1861 the plaintiff bought a piece of land on which were lying some split stones, the property of the defendant. For more than six years the stones were not moved by either party, and no claim of ownership in them was asserted by either to the other. *Held*, that the title to the stones did not pass to the plaintiff by virtue of the statute.

TRESPASS, *qu. cl.*, by James Baker against Amos Chase, for entering the plaintiff's close and carrying away stone. Tried by the court as upon the general issue, and a special plea. In 1848, Enoch Gove, owning a farm, verbally agreed with the defendant's father to sell him a large rock, or all he wished to quarry from it, for five dollars. The five dollars was paid, and the defendant's father and the defendant agreed that they would split out the stone jointly and each have a part, the defendant's father to take what he wanted for the underpinning of a house he was building, and the defendant to have the rest. A number of men were employed by them more than a week splitting out the stone, Enoch Gove and his sons assisting, " changing works " with the defendant, who assisted Enoch in splitting out stone in other places

on the farm for Enoch's use. The defendant's father hauled away all he wanted, and the defendant hauled away all he then had occasion to use, leaving the three split out, for the removal of which, in 1872, this suit is brought. Two of the three were split for door-steps, each nine and a half feet long and three feet wide; the other for underpinning, seven feet long and eighteen inches wide. Two were drawn a few feet, and the other was moved a little, and sticks or stones put under them, in 1848, when they were split; and they were not afterwards moved till the defendant carried them away in 1872. The defendant hauled away some that he had split out two or three years after 1848. He has always understood that the three were his; but, after he took some in 1850 or 1851, he neither did nor said anything to set up any claim to those that were left until six or eight years after the defendant bought the land, when the defendant and the plaintiff both claimed them. Enoch Gove died about twenty-five years ago, leaving the farm to his children, and, in their division of it, the part upon which the stone were passed to William H. and Levi, who conveyed it to the plaintiff in April, 1861. The plaintiff knew that the stone were split by the defendant and his father. The plaintiff hauled some that were split at the same place in 1848 for the underpinning of the house of the defendant's father, and hauled one that the defendant's brother had. No stone were reserved in the plaintiff's deed, and nothing was said about stone when he bought the farm. There was no evidence that Enoch Gove or his children ever said or did anything about the stone by way of claiming or disclaiming them, except what is stated in this case. The question of the ownership of the stone did not occur to his children while they owned the farm, or when they sold it. They had no opinion, belief, understanding, or thought on the subject. The plaintiff testified that he supposed he bought the stone with the farm. The defendant's entry to remove the three stones was without the plaintiff's consent. The defendant applied to the plaintiff to know whether he would object; and the plaintiff made no answer, except to claim the stones as his. The damage done by the defendant's entry was nominal. The three stones, when carried away by the defendant, were worth twenty dollars. Judgment is to be rendered by the whole court, drawing such conclusions of law and fact as the foregoing facts seem to them to warrant.

*Morrison, Stanley & Hiland,* for the plaintiff.

*Briggs & Huse,* for the defendant.

LADD, J. The court are to draw such conclusions of fact as well as law, as the facts stated in the case seem to warrant. I think the facts stated warrant the conclusion that the plaintiff, in 1848, knew that the property in the stones, about which this controversy has arisen, passed out of Enoch Gove; and it is very probable that he also knew at that time all the terms of the bargain, as well between the defend-

ant's father and Gove, as between the defendant and his father. It is enough, however, that he knew the stones then ceased to be the property of Enoch Gove, and, of course, that they ceased to be part of the realty. It is of no consequence whether he supposed or did not suppose they passed by the deed of Wm. H. and Levi Gove to him. Having once had imposed upon them the character of chattels by being split out and moved, they did not pass by that deed, whatever the parties may have supposed, unless something had been done in the meantime to clothe them again with their original character of real estate. What had happened to them ? The case shows nothing at all. They had not been appropriated to any use, or moved from the spot where they were originally left. The owners of the farm had never said or done anything by way of asserting a claim to them or otherwise. So I find that, at the time of the deed from Wm. H. and Levi Gove to the plaintiff, they were chattels, and did not pass by that deed.

Then comes the question whether they have become the property of the plaintiff by anything that has happened or failed to happen,—that is, by anything that has been done or omitted by the parties since the plaintiff became the owner of the soil on which they have been allowed to rest. For six or eight years after the deed, nothing was done or said by either party in reference to them. Each supposed himself to be the owner; but this was merely a condition of mind, a mental state, by which, I apprehend, no rights could be gained by either against the other. To be sure, the belief as to his ownership entertained by each might be a reason why nothing was done by either in the way of asserting his supposed rights. Such a belief, however, could not affect the title.

But the plaintiff had possession of the land, and the stones lay upon it, and this state of things continued six years or more before anything was done or even said between the parties as to their ownership; —thereupon the plaintiff contends that, by some application of the statute of limitations, they became his property. I think that is not so.

Undoubtedly the statute of limitations is now regarded as one of repose, and if chattels come into the possession of one not the owner, he may, without question, be thereby quieted in their enjoyment. But I think, in order that the statute should have such effect, there must be some act of appropriation, some use or enjoyment of the thing, such as would lay the foundation of an action for its recovery in favor of the owner.

It is true, the defendant slept on his rights for a very long time, and, if his property had been of a kind to yield to the assaults of the elements, he would probably have thus been saved the trouble and expense of the present litigation ; but the stones were indestructible, and the precise question now is, not whether the defendant has lost them by his long repose, but whether the plaintiff has gained them since he went into possession of the land under his deed in 1861.

There is room to argue that, inasmuch as the plaintiff knew the

stones became personal property in 1848, and that the title to them then passed out of Enoch Gove, the ancestor of his grantors, his quietly allowing them to remain, as he did, where they were left, amounted to a license to the owner to store them there, which would be good until revoked ; and if that was so, the owner would doubtless be entitled to a reasonable time after such license was revoked in which to remove them. *Cornish* v. *Stubbs*, Law Rep., 5 C. P. 334 ; *Mellor* v. *Watkins*, Law Rep., 9 Q. B. 400. I put my opinion, however, on the ground already stated, that the title to chattels will not pass by operation of the statute of limitations unless there be some act of dominion or use on the part of the possessor inconsistent with an absolute right of property in the owner.

But I think the utmost that can be said with respect to the defendant's right to enter upon the plaintiff's land for the purpose of removing the stones, admitting that such right as against the plaintiff ever existed, is, that he must do so within a reasonable time after the dispute about the ownership in 1867 or 1869. It seems to me five, or even three years was not a reasonable time, and for this reason I am of opinion the plaintiff is entitled to judgment for nominal damages only.

CUSHING, C. J.    Assuming that Gove, the ancestor, licensed the defendant to let the stones remain upon his land, that license would be revoked by the death of the ancestor and the descent of the land ; and so, if the younger Goves had licensed the defendant to let the stones remain upon the land, their conveyance of the land to the plaintiff would be a revocation of the license.    But such revocation of the license would not deprive the defendant of his right of property.    He would be entitled to a reasonable time to remove it.    1 Wash. on Real Prop. 549, 550.

It is apparent, from the facts stated in the case, that it was no inconvenience and no appreciable pecuniary damage to any of the landowners to let the stones remain upon the land ; and it could not be unreasonable for the defendant to let them lie there so long as the land-owners gave no sign of being disturbed.    So soon, however, as the defendant had notice that the plaintiff was claiming to be the owner of the stones, he might well enough understand that his acquiescence in their remaining upon his land was the result of his claim of ownership, and not of his accommodating disposition, and it would then behoove him not to sleep too long upon his rights.    On the whole, I am inclined to think that he did not get off the stones in a reasonable time.

It is well enough settled, that the statute of limitations does not begin to run until a right of action has accrued, and no right of action could accrue in this case until the plaintiff had done some act, or at least made some claim, inconsistent with the ownership of the defendant.    No such act or claim is shown until less than six years before the defendant took away the stones.    The statute, therefore, had not

run so long as to bar the right of action of the defendant, and, of course, could not have quieted the title of the plaintiff. There must be judgment for the plaintiff for nominal damages.

SMITH, J. These stones remained the property of Chase, although he may have neglected to remove them within a reasonable time. *Hoit* v. *Stratton Mills*,* (Cheshire, March adjourned term, 1874). Chase, having omitted to remove them within a reasonable time, is liable for the damage to the land of Baker occasioned by his entry to remove them, but not for the value of the stones.

The case finds that the damage done by the defendant's entry was nominal. There must, therefore, be

*Judgment for the plaintiff for one cent damages.*