Hillsborough, }
Feb. 7, 1911. }

## PEIRCE v. FINERTY & a.

Unless a sale of standing trees is made conditional upon their removal within a
limited time, the purchaser's property therein is not forfeited by a failure to
remove them; and a mere stipulation as to the time within which they shall be
removed does not render the deed conditional.

A purchaser of standing trees who neglects to remove them within the time
expressly fixed by the contract of sale has no right to enter upon the land
after that time for the purpose of removing them.

Under section 2, chapter 241, Public Statutes, replevin may be maintained for a
wrongful detention of personalty, as well as for a tortious taking; but the action
is not available against one who lawfully came into possession of property and
retains it while doubtful questions touching his right to hold it are investigated.

Replevin is a strictly possessory action and lies only in behalf of one entitled to
the immediate possession of the property which is the subject of suit.

There is no occasion for the appointment of a receiver for property which is the
subject of equitable litigation until the party in possession has refused to per-
form the acts required by the decree of the court.

Where a purchaser of standing trees has wrongfully permitted them to remain on
the land, so that they subsist on the soil and have become commingled with
the smaller growth of the landowner, the latter has a right to insist that his
young trees shall not be disturbed by a removal of the larger timber, and may
destroy the offending property if such a course is necessary to the reasonable
enjoyment of his own estate.

BILL IN EQUITY, praying that the defendants be restrained from
cutting certain "wood, timber, and growth" on the Osgood farm in
Milford and from interfering with an entry upon the land and a
cutting of said "wood timber, and growth" by the plaintiff. Trial
at the May term, 1909, of the superior court before *Chamberlin*, J.,
who decreed that the plaintiff, upon payment of a certain sum and
furnishing a bond conditioned upon the payment of all damages
which may be done to the land and the growth thereon belonging
to the defendant Paradis, may enter upon the lot and remove all
the growth under a certain size, and that he shall proceed with the
work with all reasonable diligence, so as to complete the removal
within eighteen months from the date of final judgment. To this
decree the defendants excepted.

*Herbert S. Clough* and *Burnham, Brown, Jones & Warren* (*Mr.
Jones* orally), for the plaintiff.

*Harry E. Loveren* and *Taggart, Tuttle, Burroughs & Wyman* (*Mr. Wyman* orally), for the defendants.

PARSONS, C. J.   The plaintiff claims under one John Lovejoy who, being then the owner of the real estate, on December 20, 1892, by an instrument in writing under seal, sold to him "all the timber, wood, and growth of every description on the Osgood farm." The writing contained the following stipulation: "And I give him until January 1st, 1900, A. D., to get the lot off in." November 11, 1898, Lovejoy sold the farm to the defendant Finerty, "reserving to W. E. Peirce all the wood and timber on the above described premises, with the right to cut and remove the same at any time before January 1, 1900." December 27, 1902, Finerty conveyed the premises to the defendant Paradis, by warranty deed without reservation or reference to any right of Peirce. Paradis was, however, fully informed of the right claimed by Peirce. In the spring of 1899, Peirce learned that Finerty had purchased the lot and tried to obtain the right to keep the timber on the lot by paying $25 a year. Peirce understood he could do this, but Finerty did not so agree. January 29, 1901, Peirce sent Finerty a check for one year's rent for extension of time for removing the timber. Finerty returned the check, but offered to extend the time for $150 per year dating from January 1, 1900, payable for subsequent years in advance. Peirce did not accept this offer and could not after this have reasonably understood that the growth remained by permission or consent of the landowner. Peirce made no reasonable effort to remove the timber, although knowing it remained without right. With reasonable effort he could have removed the property as early as the spring of 1902, and ought to have done so. March 31, 1903, upon notice of Peirce's claim, Paradis informed him that he had a warranty deed of the premises and should not permit Peirce to enter upon or cut the lot until after the dispute was settled. In the winter of 1904, Paradis cut wood and timber on the lot. This bill was filed May 3, 1904.

The substance of the foregoing is that Peirce, the owner of the growth upon the land, did not enter to remove the same within the time limited in the conveyance of the same to him, nor within a reasonable time thereafter, and that after this the owner of the land refused to permit him to enter and cut the growth. Such permission has been granted him by the decree excepted to. The main question argued was whether Peirce now has title to any of

the growth thereon. The defendants claim that Peirce's title was forfeited by his failure to enter and remove the same within the time limited in the conveyance or in a reasonable time thereafter, and by his conduct, which is found to have been "willful and defiant" in permitting it to remain wrongfully upon the land of another.

This question has been elaborately argued with great ability and thoroughness. If the question were an open one, the argument for the defendants would be of great assistance and might prevail; but all the grounds now urged are equally opposed to the conclusion in *Hoit* v. *Stratton Mills*, 54 N. H. 109. It was there held that unless the sale of standing trees was made conditional upon their removal within a limited time, the property in the trees was not forfeited by the failure to remove them, and that a mere stipulation as to the time of removal did not render the deed conditional This decision was made in 1873. The reasoning of the case has been frequently referred to and the decision upon the precise point followed in recent cases. *Stackpole* v. *Railroad*, 62 N. H. 493; *Smith* v. *Furvish*, 68 N. H. 123, 130; *Kidder* v. *Flanders*, 73 N. H. 345; *Dyer* v. *Hartshorn*, 73 N. H. 509. Whether the result was reached by a correct application of the reasoning of the case or not, the rule of the case has been too long settled and followed to be now disturbed. It is a rule of property which must be taken to have been within the contemplation of the parties. If it had been intended that Peirce should lose the property conveyed to him in 1892, by failure to remove it before January 1, 1900, a provision to that effect, in the light of the well settled and understood law upon the subject, would have been inserted in the conveyance. The absence of such a stipulation conclusively establishes that no such purpose was entertained. As the trees were not forfeited by the failure to remove them, the plaintiff's state of mind during his failure to act is immaterial. His property right rests, not upon considerations of equity and good conscience, but upon his legal right under an absolute conveyance and the absence of anything in the nature of the subject-matter which would make conditional a conveyance of trees, which would be an absolute conveyance of other property. *Hoit* v. *Stratton Mills*, 54 N. H. 109, 116. The validity of this conclusion is not now an open question. The growth on the defendant's land on January 1, 1900, and still remaining there, is the plaintiff's property.

*Hoit* v. *Stratton Mills*, 54 N. H. 109, was trespass *quare clausum et*

*de bonis.* The conveyance of the timber in that case contained an agreement that the grantor, Very, would deliver the timber at a certain place not on the land, on or before April 1, 1866, and that if the grantor failed to so deliver the timber, the grantee, Kingsley, might enter the premises and take the timber. Very did not deliver the timber, and in 1871 the defendants, claiming under the original conveyance, entered, cut some of the timber, and carried it away. *Doe,* J., says: "Very, the former owner of the land, having failed to deliver the timber April 1, 1866 (the time agreed upon), Kingsley, his heirs and assigns, had a reasonable time after that date in which to take it. . . . It would be unreasonable to infer that the parties understood that Kingsley, his heirs and assigns, would have a right to leave the timber incumbering the land forever, or to enter and remove it whenever they pleased at any time or times in the distant future. The reasonable inference is, that the parties understood and agreed that the timber not delivered by Very on or before the first day of April, 1866, might rightfully remain on the land a reasonable time after that date, and that Kingsley, his heirs and assigns, might rightfully enter within that reasonable time to remove it. The length of the reasonable time is a question of fact for the jury. If the defendants entered after the expiration of the reasonable time, they are liable for the entry." The case was transferred upon a disagreement of the jury, and the ruling was that the plaintiff could maintain trespass *quare clausum* if the fact as to the expiration of a reasonable time were found by the jury in his favor. Subsequently, after a trial, the case was again before the court. 54 N. H. 452. The right of the plaintiff to maintain trespass *quare clausum* was reaffirmed and his damages limited to such as were recoverable in that form of action.

In the present case, the parties did not leave to the judgment of a jury the length of time within which the grantee of the timber should have the right to enter and take it, but expressly limited such entry to January 1, 1900. If, therefore, upon the rule of *Hoit* v. *Stratton Mills*, it must be inferred that the parties understood and agreed that Peirce's property in the growth would not be lost by his failure to remove it before January 1, 1900, it follows from the same case that they must have understood and agreed that Peirce after that date would have no right to enter to cut and remove the same. "If the time for removing trees or other things from the vendor's land is expressly fixed in the contract of sale, the

purchaser is a trespasser in entering after that time to remove them."
*Hoit* v. *Stratton Mills*, 54 N. H. 109, 112. The further conclusion
that the plaintiff in that case could not recover for the value of the
trees, since his title thereto was not conditioned upon their removal
within a reasonable time, rests upon the rule that "an unconditional
conveyance of growing trees without the land instantaneously sev-
ers them from the land, in contemplation of law, and transforms
them into personal property" (*Kingsley* v. *Holbrook*, 45 N. H. 313),
and the decision in *Plumer* v. *Prescott*, 43 N. H. 277, that if the
grantee of trees removes after the time limited trees actually
severed within the time, the landowner cannot recover the value
of the trees.

But the holding that the value of the trees belonging to one who
enters without right and takes them is not an element in the land-
owner's damages for the entry furnishes no basis for a claim of
right to enter and take them. Inability to maintain trespass
*de bonis* will not justify trespass *quare clausum*. That the owner
of personal property wrongfully upon the land of another is a
trespasser if he enters to take it without an express or implied
license to do so—in other words, has no right to enter—has been
repeatedly decided in other cases. *Dame* v. *Dame*, 38 N. H. 429,
432; *Baker* v. *Chase*, 55 N. H. 61; *Stackpole* v. *Railroad*, 62 N. H.
493. In *Dyer* v. *Hartshorn*, 73 N. H. 509, the most recent case
relied upon by the plaintiff, the right to maintain trespass *quare
clausum et de bonis* is denied upon the ground that the plaintiff
was neither "the owner of the land or the trees when the alleged
trespass was committed." This plainly implies, in accordance
with all the authorities, that if the plaintiff had been the owner of
the land the entry complained of would have been wrongful. There
is a right of recaption or reclamation of personal property upon
another's land without fault of the owner. In such cases, under
certain circumstances the owner of personal property has a right to
enter to retake his property and is not a trespasser if he does so.
*Dame* v. *Dame*, 38 N. H. 429; *Carter* v. *Thurston*, 58 N. H. 104,
107; 3 Bl. Com. *40. But the right does not extend to cases where
the situation is created by the fault or wrong of such owner.

The decree of the court therefore attempts to give to Peirce a right
in Paradis' land which he does not possess and for which no legal
foundation exists. As the plaintiff has no legal right to enter upon
Paradis' land, he cannot recover damages if permission to do so is
refused him. Paradis' refusal to permit him to enter and cut and

remove the trees would not be a conversion of the trees by Paradis (*Town* v. *Hazen*, 51 N. H. 596; *Stackpole* v. *Railroad,* 62 N. H. 493); though the assertion of a title to all the growth and the sale of it by Finerty to Paradis might be.    *Burley* v. *Pike,* 62 N. H. 495; *Town* v. *Hazen, supra.*    The right of exclusive possession is one element of the property right in real estate.    For public purposes, upon the payment of damages the state may authorize the taking from the owner of some or all of the elements of real estate ownership; but as the whole cannot be transferred from one individual to another for a private purpose merely because it seems more equitable that one should own the land and the other its value, no part of the right can be so transferred.    The court might as well transfer the entire title to the land to the plaintiff as to give him the right to occupy it for eighteen months without permission from the owner. As Peirce has no right to enter the land, the court cannot give him one.    The landowner may think the diminution of the injury to his property by the removal of the trees under his direction may be more advantageous to him than the judgment of a jury for compensation for the damage done by the removal by one not the owner. He may prefer to remove first, now or at some future time, the growth belonging to him.    Whatever his reasons may be, no ground appears upon which his land ownership right can be legally interfered with for the benefit of a wrongdoer.

It has been suggested that the bill originally asked for relief in another form; but as the request has been abandoned, the questions of what relief the plaintiff might have in equity or whether he might maintain trover upon the facts stated, as well as what course the landowner might pursue to rid his land of the incumbrance without subjecting himself to liability and what remedy he has for the wrong done him by the plaintiff, are questions not now before the court.    The conclusion that the court is without authority to license the plaintiff to trespass upon the defendant's close is fatal to the decree permitting such action.

*Exception sustained: decree set aside.*

All concurred.

The foregoing opinion was filed May 3, 1910.    The defendant Paradis subsequently tendered to the plaintiff the sum found to be the value of the latter's trees, less the amount owed to Paradis for the occupancy of his land, as a full satisfaction of the plaintiff's

claim to the trees. The plaintiff refused to accept the tender, and thereupon the defendant filed a motion for an order that the land and the growth thereon be freed from the plaintiff's claim, upon payment of the sum tendered. The plaintiff commenced a replevin suit for the trees claimed by him, and also filed a motion for the appointment of a receiver who should cut the entire growth and divide the proceeds.

The whole matter came on for hearing, and it was found that the plaintiff's claim is a cloud upon the defendant's title, preventing him from obtaining a fair price for his timber or land, and that the defendant's title might prevent the plaintiff from obtaining a fair price for the trees, which he does not desire to sell.

Subject to exceptions, the court *pro forma* denied both motions and ruled that replevin could not be maintained. It was further found that "the granting or the denial of any of the foregoing motions, or of any relief at law or in equity, so far as they rest on the discretion of the trial court on the facts found, depend on the power of the court in the premises and on what remedies at law or in equity are open to the parties." Transferred from the May term, 1910, of the superior court by *Chamberlin*, J.

*Herbert S. Clough* and *Burnham, Brown, Jones & Warren* (*Robert L. Manning* orally), for the plaintiff.

*Taggart, Tuttle, Burroughs & Wyman* (*Mr. Wyman* orally), for the defendant. Where property has been wrongfully intermingled in such a manner that separation is difficult or onerous, the wrongdoer is entitled to no more than the fair value of that part of the mass belonging to him. Unless the defendants have a right in self-defence to dispose of this whole property and to account to the plaintiff in advance for the value of his interest, the result is that by the plaintiff's own wrong the defendants have been placed absolutely at his mercy. There is no peculiar value to this timber that makes it inequitable to translate it into terms of money. The trial court had no difficulty, when the case was first heard, in arriving at the definite market value.

"Not only has the plaintiff a remedy by legal process for the injuries which he suffers from the defendant's property being on his land after the time of removal; he also has the 'natural, essential, and inherent' right of 'protecting property.' He can, without legal process, protect his property against the wrongful presence

and injurious action and effect of the defendant's property. And this right is the right to do whatever, under the circumstances of each case, apparently is reasonably necessary to be done in defence. *Aldrich* v. *Wright*, 53 N. H. 398. In that case some authorities are cited showing that it may be reasonably necessary, in the defence of one's own property, to destroy the property of another. If in defence it is reasonably necessary for A to remove B's property from A's land, he may remove it. If it is reasonably necessary for him to destroy it, he may destroy it. If it is reasonably necessary for him to sell it, he may sell it. If it is reasonably necessary for him, in defence, to do anything after reasonable notice, he may do it after reasonable notice." *Hoit* v. *Stratton Mills*, 54 N. H. 109, 116.

This case, decided in 1873, followed and approved *Aldrich* v. *Wright*, 53 N. H. 398. It is good law in New Hampshire today; and the paragraph just quoted is not only good law, it is good common-sense, and it fits this case. *Haley* v. *Colcord*, 59 N. H. 7. Acting accordingly, the defendants have done that which seemed to them reasonable; and we submit that their action must be upheld if what they have done and what they offer to do is consistent with the conduct of a reasonable man under the same circumstances. The question is not whether they might have done something else, but whether what they have done and are trying to do is so far consistent with reason that a person of average prudence might have done the same thing under the same circumstances. This is a question of law on the facts in the case. The discretion to be exercised is the discretion of the owner of the land—not that of the plaintiff or of the court. The issue is the same as though a jury had found in their favor, and the verdict was before this court for review upon all the evidence.

When the plaintiff attempts to go on the land by himself, or by process in equity, or in replevin, or through a receiver, he is attempting to substitute his discretion for that of the owner of the land. Only last May this court decided that the plaintiff had no right to enter the defendants' land; that the defendants' refusal to permit him to enter did not constitute a conversion of the trees; and that before the plaintiff's portion of the growth was taken, the defendants could remove, "now or at some future time," the growth belonging to them. The plaintiff should not now be allowed to avoid this decision by attempting to substitute a sheriff or a receiver for himself. Partition proceedings cannot be forced upon the innocent

party by a wrongdoer. Parties cannot be made tenants in common against their will. *Ryder* v. *Hathaway*, 21 Pick. 298.

Under the circumstances, there can be no manner of doubt that the defendants in self-defence would have the legal right to sell the whole of this growing timber, including the plaintiff's as well as their own; and with proper reservations as to the value of the interests of the plaintiff, they would pass a good, indefeasible title to the whole mass to a purchaser. After such a sale, the defendants would have to account to the plaintiff for the value of his interest; but the plaintiff would not be entitled to receive more than one dollar for one dollar's worth of timber, nor more than three thousand dollars for three thousand dollars' worth of timber. The court has already found the value of his interest. With the prospect of interminable litigation, no purchaser can be found to pay a fair price for the whole or any part thereof. It is, therefore, the plainest equity to allow the defendants to answer to and pay the plaintiff in advance for the value of his interest. This is not a case of forcing an innocent man to sell his property at a valuation. It is not a case of eminent domain for private purposes. It is simply an application of well understood principles of equity and self-defence in consequence of this plaintiff's own wrongdoing.

PEASLEE, J. The case comes back to this court for instructions as to the law governing the rights of the parties, the presiding justice finding it impracticable to determine what is the reasonable course to be pursued until those rights are more fully defined. The plaintiff seeks to replevy the trees, or to have the entire growth removed by a receiver. The defendant does not wish to have his trees cut at present and offers money compensation for the plaintiff's rights.

Replevin will not lie. By the common law of this state, the remedy was available only in cases where there was wrongful taking. Mere wrongful detention was not sufficient. In the latter case detinue was the appropriate remedy, the distinction being the same as that between trespass and trover. *Dame* v. *Dame*, 43 N. H. 37; *Woodward* v. *Railway*, 46 N. H. 524; *Mitchell* v. *Roberts*, 50 N. H. 486. Two years after the decision in the case last cited, the law was changed so that the action could be maintained for a wrongful detention as well as for a tortious taking. Laws 1873, c. 21, s. 1; P. S., c. 241, s. 2; *Carter* v. *Piper*, 57 N. H. 217; *Kittredge* v. *Holt*, 55 N. H. 621. But the right of action, as enlarged by the act of 1873, is not so extensive as to cut off all

right of one who came lawfully into possession of property to retain the same until doubtful questions touching the right to hold the property are investigated. There must be a wrongful withholding. A retention of the chattel while reasonable investigation is being made is not wrongful.

" If there is a reasonable doubt of the demandant's right to the possession of the property, a refusal to deliver it until a reasonable opportunity is had to ascertain his right is not sufficient evidence of a conversion. In such a case the law does not require one to act on the instant and either comply with or deny the demand at his peril. . . . It is immaterial on what particular point material to the justice of the demand the doubt exists. It may arise upon the question of lien by the holder, or the amount of the lien, as well as upon the identity or authority of the person making the demand. Where the facts are undisputed and the doubt is upon a question of law, a refusal to deliver until the advice of counsel can be obtained may be considered as the result of a reasonable hesitation in a doubtful matter." *Hett* v. *Railroad*, 69 N. H. 139; *Stahl* v. *Railroad*, 71 N. H. 57.

One question in this case (as yet undecided) is whether the defendant may not now be entitled to have the plaintiff's property remain upon the land. It can hardly be claimed that the question is not at least a doubtful one, upon which the defendant may reasonably hesitate before becoming a wrongdoer by refusing to comply with the plaintiff's demands. The question of the right to take or receive this property is now in issue in the present proceeding. The plaintiff attempts to replevy the property while this suit in equity is pending, and thereby render nugatory any adverse decree which may hereafter be entered. The same reasoning which forbids a re-replevin while the first suit is pending applies here. "The title to the property, or the right of possession, was the only question in dispute, and it was the same question in both cases. Being impleaded in the first case, the plaintiff could try his right there, but could not duplicate or multiply the same proceeding for vexatious or other purposes. . . . Reason, authority, and public policy forbid such a proceeding, and require that litigation, once commenced, shall proceed to its end without delay or vexation." *Bonney* v. *Smith*, 59 N. H. 411, 412.

There is a further fundamental objection to the maintenance of the suit. Replevin is a strictly possessory action. It lies only in behalf of one entitled to the immediate possession of the property.

*Mitchell* v. *Roberts*, 50 N. H. 486. It was decided in the former opinion in this case that the plaintiff had not the right to enter to take the property, and that the court had no power to confer such right upon him. As the right did not exist, it could not be created by the issue of a replevin writ.

The former decision is attacked upon the ground that it leaves the plaintiff holding title to the trees, but denied the right to get the possession necessary to make his title of any value. The position taken is not entirely correct on either point. While the plaintiff's title is recognized, it is no longer a complete one. By his own act he has incumbered his property. It is now subject to certain rights of the defendant. And though the plaintiff cannot enter to recover the trees, it does not follow that he is without remedy to compel the defendant to do what is reasonable in the matter of restoring to the plaintiff the trees or the value of the plaintiff's interest therein.

The important factor in the situation is that the right of ridding the defendant's land of the plaintiff's property or title has passed beyond the control of the plaintiff, and is now vested in the defendant. It is the defendant's right (viewed from his standpoint) and his duty (viewed from the plaintiff's position) to do what is reasonable to terminate the present condition of the property of the contending parties. Whether, in order to protect himself from future litigation, the landowner might in the first instance maintain a bill to obtain a decree directing his course in the premises, it is not now necessary to consider. He has been brought into equity by the action of the tree-owner, and a final disposition of the controversy will be made in this proceeding. There is at present no ground for the appointment of a receiver. If, when the decree is entered, the landowner refuses or neglects to perform the acts found to be reasonably necessary to be done by him, it may be necessary that they be done by an officer of the court. If so done, they would still be his acts in contemplation of law. It cannot be assumed in advance that he will so refuse to do his duty; and until he does, there is no ground for usurping his privilege.

In ruling *pro forma* against the defendant's motion for a decree that the plaintiff's claim be satisfied by a money payment, the superior court suggests that if such decree were made it would "compel the plaintiff to sell his property." The presiding justice expresses his doubt of the power so to do. If this would be the effect of the order, the doubt expressed would be well founded and

would be supported by the reasoning of the former opinion in this case. But the situation may be such that the tree-owner has already lost his title to the specific property. There is no case in this state deciding that he cannot lose it. All that is determined by the prior cases is that the mere leaving of the trees upon the land, so that they wrongfully subsist upon the landowner's estate, does not transfer the title to the trees to the landowner. *Hoit* v. *Stratton Mills*, 54 N. H. 109. An additional feature is now presented in this case. Not only has the tree-owner unlawfully abstracted nutriment from the landowner's estate, but in process of time the new growth which belongs to the landowner has become commingled with the larger growth sold to the tree-owner. The question of the confusion of goods distinguishes this case from those which have preceded it, and may lead to a different result as to the rights of the parties. The landowner is entitled to a reasonable use of his estate. This includes a right to cultivate, develop, and market his growing forest product. If under all the circumstances it is a reasonable use of his premises to insist that his young trees shall not be disturbed, the owner of the older ones cannot be heard to complain. *Stackpole* v. *Railroad*, 62 N. H. 493. The landowner's right extends to the destruction of the offending property, if that is necessary to the reasonable enjoyment of his own property. *Hoit* v. *Stratton Mills, supra*. It can make no difference in principle whether that destruction is brought about by swift combustion caused by burning the trees with fire, or by the slow combustion of natural decay. Whether one who has willfully and defiantly intermingled his property with, or affixed it to, that of another can have any equitable claim for benefits conferred may not be a doubtful question; but it is not necessary to investigate it here, for the landowner does not insist on the right (if he has it) to keep the property without compensation. He is willing to pay the full market value of the property wrongfully commingled with his own. If it shall hereafter be found that it is reasonable that he be left to carry out his ideas of forestry without disturbance, a decree that his title is freed from all claim of the plaintiff upon payment of the proffered sum will end the case. If, however, it is found that it is not reasonable for the landowner to thus insist upon the use of his own premises, it will be necessary to determine what course he must reasonably take to rid his land of the incumbrance, and a decree will in that event be entered in accordance with such finding.

A final order cannot now be made because the facts are not yet

found.   When it has been ascertained what the rule of reasonable conduct under the circumstances requires of the defendant, the order to be made will follow as a legal conclusion.   The relief to be granted is discretionary only in that the finding of the facts as to reasonableness rests with the justice presiding at the trial.

*Case discharged.*

All concurred.