[L. A. No. 6952. In Bank.—June 29, 1923.]

## GLASSELL DEVELOPMENT COMPANY (a Corporation), Appellant, v. CITIZENS' NATIONAL BANK OF LOS ANGELES, California (a Corporation), Respondent.

[1] BANKS AND BANKING—RECEIPT OF DEPOSITS—DEBTOR AND CREDITOR.—A bank in receiving ordinary deposits becomes the debtor of the depositor, and its implied contract with him is to discharge this indebtedness by honoring such checks as he may draw upon it, and the bank is not entitled to debit his account with payments not made by his order or direction.

[2] ID. — PAYMENT OF FORGED OR ALTERED CHECKS — LIABILITY OF BANK—NEGLIGENCE.—As between the bank and its depositors the payment of forged or altered checks by it is made at its peril and cannot be charged against the depositor's account unless some negligent act or conduct of his has contributed to induce such payment—the bank itself being free from negligence, or unless by his subsequent conduct in relation to the matter he is upon equitable principles estopped to deny the correctness of such payments.

[3] ID.—DELIVERY OF BANK STATEMENTS TO DEPOSITOR—DUTY OF DEPOSITOR TO EXAMINE—NEGLIGENCE.—When a depositor's pass-book has been written up and returned to him with canceled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time, and if they disclose forgeries or alterations to report them to the bank, failing in which he cannot, if his failure results in detriment to the bank, dispute the correctness of payments thereafter made by it on similar checks. This rule, however, assumes that the bank itself has not been guilty of negligence in making the payment, for when by the exercise of proper care it could have discovered the alteration or forgery it must bear the loss notwithstanding that the depositor failed in his duty to examine the accounts.

[4] ID.—NEGLIGENCE—EVIDENCE.—Whether a given act or course of conduct is negligent depends upon the circumstances of the par-

2. Depositor's right to recover amount of forged or raised checks paid by bank as affected by the fact that he entrusted the examination of vouchers to the employee who was guilty of the original fraud, notes, 1 Ann. Cas. 632; Ann. Cas. 1912D, 495; 7 L. R. A. (N. S.) 744.

3. On duty of depositor having a checking account with a bank to examine pass-book and vouchers upon their return from the bank, note, L. R. A. 1915D, 741.

ticular case; and the degree of care to be exercised by a bank in the payment or honoring of a check must be measured by the circumstances presented to it for its consideration.

[5] ID.—PAYMENT OF RAISED CHECKS—ACTION AGAINST BANK—NEGLIGENCE—FINDING—EVIDENCE.—In this action by a depositor to recover from a bank an amount of money paid out of plaintiff's account on a number of altered or raised checks, the finding of the trial court that the payment of such checks was due to plaintiff's negligence and that the bank was not negligent in not detecting the forgeries is supported by the evidence.

[6] ID. — EXAMINATION OF STATEMENTS — EFFECT OF FAILURE UPON LIABILITY OF BANK—PREJUDICE—EVIDENCE.—In such action, the negligence of the plaintiff in failing to examine the bank's monthly statements and to report errors therein cannot affect the bank's liability to make good to the plaintiff the amount of the first forged check, in the absence of an affirmative showing by the bank of prejudice as the result of such failure to examine and report, such prejudice usually consisting in the loss of opportunity to take timely steps for the recovery of the money of which it was fraudulently deprived, and which steps it could have taken if promptly advised of the incorrectness of its statement arising from the unauthorized payment.

[7] ID.—STATUTE OF LIMITATIONS—PAYMENT OF RAISED CHECK—APPLICABILITY OF SECTION 340, SUBDIVISION 3, CODE OF CIVIL PROCEDURE.—Subdivision 3 of section 340 of the Code of Civil Procedure, which provides that an action "by a depositor against a bank for the payment of a forged or raised check" must be brought within one year, applies to an action by a depositor against a bank to recover money paid out of the depositor's account on altered or raised checks.

[8] ID. — STATUTORY CONSTRUCTION. — Statutes, in construing them, should be given a meaning which will sustain rather than defeat them, one which will make them operative, if the language will permit, rather than render them without effect.

[9] ID.—TIME OF COMMENCEMENT OF STATUTORY PERIOD—NOTICE.—The one year provided by subdivision 3 of section 340 of the Code of Civil Procedure within which an action must be brought "by a depositor against a bank for the payment of a forged or raised check," begins to run from notice to the depositor given by the bank.

[10] ID.—DEMAND—DENIAL OF LIABILITY.—It is the general rule that there is no default on the part of the bank, and hence no accrual of a cause of action against it to recover the balance of a general deposit, until its payment is demanded or there is some act on the part of the bank dispensing with such demand; but where,

however, the bank, either in terms or in effect, has denied liability to the depositor for the amount in question, this is "an act on the part of the bank dispensing with such demand," the cause of action accrues, and the statute of limitations is set in motion.

[11] ID.—INAPPLICABILITY OF SECTION 348, CODE OF CIVIL PROCEDURE. In an action by a depositor against a bank to recover money paid out on a raised or altered check, subdivision 3 of section 340 of the Code of Civil Procedure prevails over section 348 of the Code of Civil Procedure, which provides that there is no limitation in the time for commencing suit against a bank for the recovery of money or other property deposited with it, because the latter section declares a general rule, and the former deals with a particular class of cases falling otherwise within the general rule, and for the further reason that subdivision 3 of section 340 of said code is of more recent enactment.

[12] ID.—COMMENCEMENT OF ACTION AFTER ONE YEAR FROM NOTICE— ACTION BARRED.—An action by a depositor against a bank to recover money paid out by the bank on a raised check is barred by subdivision 3 of section 340 of the Code of Civil Procedure, where such action is not commenced until more than a year after receipt by the plaintiff of notice from the bank of the payment of said raised check.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Stephens & Stephens for Appellant.

L. B. Cosgrove, Robert B. Murphey, and Hunsaker, Britt & Cosgrove for Respondent.

KERRIGAN, J.—This is an appeal from a judgment in favor of the defendant in an action by the plaintiff to recover $10,495.85 paid out of the account of the plaintiff on eight altered or raised checks between January 18, 1917, and July 23, 1918.

The plaintiff and five other corporations during the period involved in the transactions giving rise to this action maintained a joint office in the city of Los Angeles under the management of C. Wesley Roberts. One Charles H. Smith was in charge of this joint office. He had sole charge of the auditing and bookkeeping for all of these companies, and the clerks and stenographers of the office were under his supervision.

Originally employed at a salary of $75 per month, he later received $150, which was subsequently reduced to $100. In their banking transactions the companies used in common a voucher form of check upon which appeared the names of all six of them.

The raised checks were all issued for the purpose of adjusting payments made for the benefit of two or more of the companies from the funds of one of them. All checks were signed by C. W. Roberts, president, and A. Glassell, secretary, and the attached voucher was initialed by Smith, under whose direction the checks were prepared and who, after they had been signed, made the alterations and caused them to be deposited. Smith was the sole custodian of cash taken in by the various companies. Some of this cash he misappropriated, and to cover the shortage thus created he altered previously signed checks issued by the plaintiff, so that upon presentation for collection the amounts of said checks were debited to the plaintiff's account and credited to that of the respective payees thereof, who in this manner were repaid the amount of Smith's peculations, but with the result of an unauthorized diminution of the plaintiff's account with the defendant.

Plaintiff's account was balanced monthly, and its passbook and canceled checks, including the raised checks, with the bank's statement showing an itemized list of deposits and withdrawals, were returned to the plaintiff monthly. Printed at the top of each of such statements was this request from the bank: "Please examine at once. If no error is reported in ten days the account will be considered as correct." Notwithstanding that the officers of plaintiff knew of the custom of banks in Los Angeles to render these monthly statements and to return canceled checks to their depositors, the record shows that none of them during the five years of Smith's employment ever made or caused to be made any systematic examination of the canceled checks or bank statements, or compared either with the plaintiff's record of checks issued, or even compared the balance as shown by the pass-book and monthly statements with the company's ledger account.

On October 27, 1918, one of the forgeries was discovered by Roberts, and upon being questioned Smith admitted the others.

Thereafter the plaintiff presented to the bank a check covering the entire amount of Smith's embezzlement, payment of which was refused. The plaintiff then presented a check for $3,100, covering the amounts embezzled within a year prior to the date of presentation. Of this also payment was refused, whereupon this action was brought, and resulted in a judgment in favor of the defendant.

The trial court filed findings of fact and conclusions of law in which it found that in altering the said eight checks Smith was acting in the direct scope and course of his employment, and therefore his acts were the acts of plaintiff; that the alteration of the checks by Smith was rendered possible of accomplishment by the gross negligence of the plaintiff prior to the payment of said checks respectively and not by the negligence of defendant, and that as to the first three checks the cause of action was barred by the provisions of subdivision 3 of section 340 of the Code of Civil Procedure.

In its appeal taken from such judgment the plaintiff urges as ground for reversal that the evidence is insufficient to support the findings or the conclusions of law based thereon.

Before discussing the evidence it may not be amiss to state the general principles governing the question of liability as between a bank and its depositors when forged checks are involved.

[1] It is settled law that a bank in receiving ordinary deposits becomes the debtor of the depositor, and its implied contract with him is to discharge this indebtedness by honoring such checks as he may draw upon it, and the bank is not entitled to debit his account with payments not made by his order or direction. [2] As between the bank and its depositors the payment of forged or altered checks by it is made at its peril and cannot be charged against the depositor's account unless some negligent act or conduct of his has contributed to induce such payment—the bank itself being free from negligence, or unless by his subsequent conduct in relation to the matter he is upon equitable principles estopped to deny the correctness of such payments. (*Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31 [41 L. R. A. (N. S.) 529, 124 Pac. 704]; 4 Cal. Jur. 215, 216, secs. 103, 104; 7 C. J. 683.)

[3]    And the weight of authority, and perhaps of reason, supports the view that when a depositor's pass-book has been written up and returned to him with canceled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time, and if they disclose forgeries or alterations to report them to the bank, failing in which he cannot, if his failure results in detriment to the bank, dispute the correctness of payments thereafter made by it on similar checks. (7 C. J. 687; *California Vegetable Union* v. *Crocker Nat. Bank,* 37 Cal. App. 743 [174 Pac. 920]; *Morgan* v. *United States Mortgage & Trust Co.,* 208 N. Y. 218 [Ann. Cas. 1914D, 462, L. R. A. 1915D, 741, 101 N. E. 871].)

This rule, however, assumes that the bank itself has not been guilty of negligence in making the payment, for when by the exercise of proper care it could have discovered the alteration or forgery, it must bear the loss notwithstanding that the depositor failed in his duty to examine the accounts. (*Manufacturers' Nat. Bank* v. *Barnes,* 65 Ill. 69 [16 Am. Rep. 576]; *Merchants Nat. Bank* v. *Nichols & S. Co.,* 223 Ill. 41 [7 L. R. A. (N. S.) 752, 79 N. E. 38]; *Leathers Mfrs. Bank* v. *Morgan,* 117 U. S. 96 [29 L. Ed. 811, 6 Sup. Ct. Rep. 657, see, also, Rose's U. S. Notes]; 2 Morse on Banking, 5th ed., secs. 466, 472; *New York Produce Exch. Bank* v. *Houston,* 169 Fed. 785 [95 C. C. A. 251].)

This subject is quite fully treated in volume 3 of Ruling Case Law, 537, 538, sections 167, 168, where it is said: "The majority of the suits brought by depositors to recover payments made on forged or fraudulently altered checks, result from the crimes of some trusted employee of the depositor, and usually the court has to deal with a long series of successful forgeries. In such cases, after his pass-book has been balanced and returned to a depositor with any of the forged or fraudulently altered checks, the authorities practically agree that in the absence of negligence on the part of the bank the failure of the depositor to notify the bank within a reasonable time that such checks have been forged or fraudulently altered will, if the delay is caused by his negligence in not using due care and diligence in examining the pass-book and vouchers, or in giving notice, if he had discovered the forgeries, constitute a defense by the

bank to the depositor's suit for the money subsequently paid out on similar checks. . . .

"A bank is under an obligation to its depositor to use care in scrutinizing checks paid, to discover forgeries and render its accounts to prevent the perpetration of frauds upon its depositor. And if the bank's officers, before paying forged or altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of these checks, even if the depositor omitted all examination of his account. In every case where suit is brought by a depositor to recover from a bank money deposited by him, which the bank has paid out otherwise than in conformity with his orders, and the bank sets up the defense that it is nevertheless entitled to charge the depositor with such payments, because of conduct of the depositor subsequent to such payment, the preliminary question to be determined is whether the bank was or was not guilty of negligence in making the payments. If it was negligent, if its officers are found to have failed to exercise due and reasonable care in detecting the forgery or fraud, then the subsequent negligence of the depositor, his failure to perform his duty in examining his pass-book and vouchers with reasonable care and report to the bank in a reasonable time any errors or mistakes, will constitute no defense, and it is generally a question for the jury whether the bank was negligent in paying a forged or fraudulently altered check."

The evidence in the case at bar shows that the plaintiff did not exercise ordinary care and prudence in the manner of issuing its checks, and that it entirely failed to examine its canceled checks, pass-book, and bank statements of checks paid, or to compare the same with its records, which would have immediately disclosed the forgeries, the first or any of which having been discovered, their repetition could have been avoided.

The negligence of the plaintiff in failing to examine the bank's monthly statements is admitted; but it is urged that the defendant is not in a position to take advantage of this circumstance, for the reason that it was itself negligent in paying the checks, and that the finding of the trial court that their payment was due to the plaintiff's negligence and not to that of the defendant is unsupported by the evidence.

In this contention the appellant refers particularly to the evidence in the case showing that an inspection of the raised checks readily disclosed that the figures designating the amount called for had in each case been altered, and that it was, therefore, the duty of the bank to refuse to honor it, or at least to have inquired of the officers of the plaintiff as to the authenticity of the alteration before treating the check as valid; and that in not doing so the bank was guilty of negligence, and is, therefore, not in a position to urge in its defense the admitted negligence of the plaintiff in failing to examine the bank's monthly statements.

[4] Whether a given act or course of conduct is negligent, it has often been said by the courts, depends upon the circumstances of the particular case; and the degree of care to be exercised by a bank in the payment or honoring of a check must be measured by the circumstances presented to it for its consideration. In the case at bar it will be noted that each of the checks bore the genuine signature of the drawer; each was a voucher form of check upon which appeared the names of the several corporations managed by Roberts, including both the drawer and payee of the check; the respective corporations were managed by the same individual, had a common office, and their accounts were kept by the same person, and three of them carried their bank accounts with the defendant, who knew of the interlocking management of these depositors. The purpose of each check was stated on its face, and in every instance that purpose was an adjustment of accounts between the drawer and payee of the check. The checks, with the exception of one of them, the first, when presented merely entailed the debiting of the account of one of these related corporations and the crediting of that of another of them; none of them required the delivery of money to any individual.

Now, the raising of a check is usually done by and for the benefit of the payee thereof, who, in case he succeeds in cashing it, resorts to flight, rendering the recovery of the money by the bank or the drawer of the check extremely unlikely. That a corporation should present for passage to its credit the check of an allied corporation after it had been fraudulently raised is quite an unusual occurrence, and the benefit to be derived in doing so not easily conceived of.

Under the circumstances in which the checks were drawn and presented there was little, if anything, in the fact of the alteration of the amount called for to suggest to the paying teller of the  bank the presence of fraud, especially in view of the fact that checks of the plaintiff bearing similar alterations upon their face, the validity of which was not disputed, were not infrequently drawn upon the defendant and honored by it; at least that view might be reasonably entertained either by a trial court or a jury.   [5]   It is apparent that in the case at bar the trial court so regarded the matter, and we are unable to say that the evidence does not fully and logically support its conclusion.

[6]   It is evident, however, that the negligence of the plaintiff in failing to examine the bank's monthly statements and to report errors therein cannot affect the bank's liability to make good to the plaintiff the amount of the first forged check, since that negligence contributed in no manner to its payment, unless the bank makes an affirmative showing of prejudice as the result of such failure to examine and report, such prejudice usually consisting in the loss of opportunity to take timely steps for the recovery of the money of which it was fraudulently deprived, and which steps it could have taken if promptly advised of the incorrectness of its statement arising from the unauthorized payment.   (*Janin* v. *London & S. F. Bank*, 92 Cal. 14 [27 Am. St. Rep. 82, 14 L. R. A. 320, 27 Pac. 1100].)   In the case at bar the defendant has made no such affirmative showing; and it does not appear that the situation in this respect was any different at the time of the rendition of its statement disclosing the first forgery than at the time the series of forgeries was discovered and reported.

It is true the bank relies upon other acts of alleged negligence on the part of the plaintiff to exempt it from the obligation to make good the amount paid out upon this first forgery, such as the practice of the plaintiff in having its checks made out upon a typewriter, its failure to perforate them so as to disclose the respective amounts for which they were drawn, and an alleged practice on the part of the plaintiff to issue valid checks bearing erasures.   But in view of the finding of the trial court that the recovery of the amount of this first check, together with the second and third, is barred by subdivision 3 of section 340 of the

Code of Civil Procedure, it will be unnecessary to consider the effect of this additional negligence (if such it may be called) if the court's conclusion as to the bar of the statute must be upheld.

It is conceded that the present action was not commenced until more than a year elapsed after receipt by the plaintiff of notice from the bank of the payment of the first of the series of raised checks.

Said section and subdivision of the Code of Civil Procedure provide that an action "by a depositor against a bank for the payment of a forged or raised check" is barred after the lapse of one year; and if this code provision has application to the present action it is conceded that as to the check now under consideration the action was not commenced within time.

It is very earnestly contended by the appellant that such provision is not applicable, and that its rights are governed by section 348 of the Code of Civil Procedure, providing that there is no limitation in the time for commencing suit against a bank for the recovery of money or other property deposited with it. In support of this contention the appellant points out that the language of the subdivision in question does not technically describe the present action. It denies that the action is one "for the payment of a forged or raised check," but is one to recover the amount of a deposit with the bank.

[7] It must be admitted that the language in question is extremely inept to describe the nature of the action; but if we bear in mind the situation which arises upon the payment by a bank of a forged or raised check, namely, that the bank charges the amount thus paid to the depositor's account, and refuses to return to the depositor the amount of his deposit except as diminished by such unauthorized payment, which refusal gives rise to an action against the bank to recover that particular amount, it is sufficiently obvious that such action is the one referred to. Unless the statute applies to such cases it is, as claimed by the defendant, meaningless. [8] It is a cardinal rule in the construction of statutes that they should be given one which will sustain rather than defeat them,—which will make them operative, if the language will permit, rather than render them without effect (Lewis' Sutherland on Statutory Construction,

2d ed., sec. 498; Civ. Code, sec. 3541; *Cuthbert* v. *Woodman,* 185 Cal. 43, 45 [195 Pac. 673]). It has been held that the word "for" means "by reason of," "because of," and "on account of," and that a statute prescribing a limitation on "actions for injury to the person . . . caused by negligence" should be interpreted to mean action "by reason of" or "because of" or "on account of" injuries to the person caused by negligence. (*Sharkey* v. *Skilton,* 83 Conn. 503 [77 Atl. 950].)

This is the construction given to this provision in the case of *California Vegetable Union* v. *Crocker Nat. Bank,* 37 Cal. App. 743 [174 Pac. 920]. That action arose out of the payment of a series of forged checks charged to the plaintiff's bank account. The court held that the effect of this section applied to that action was to bar all checks which were paid more than a year after the rendition of the bank's statement to the depositor before its commencement. In passing it may be said that while the syllabus in the report of that case states that "the provision of the statute of limitations embodied in subd. 3 of sec. 340 C. C. P., that an action against a bank by a depositor for the payment of a forged check must be brought within one year, begins to run on presentment and payment of the check, and not upon discovery of the forgery," still we think this is not the true effect of the decision, since in that case the year provided by the statute had elapsed not only from the time of the payment of the checks but also from the time of the rendition by the bank of its monthly statement showing such payment; in fact, that action was not commenced until one year and seven months after the time when the depositor received such monthly account, so that the depositor allowed more than a year to elapse before bringing its action after it had had ample time in which to discover the forgeries if it had exercised reasonable diligence, and this fact is mentioned in the opinion of the court. [9] The true rule, we think, is that the year prescribed by the statute commences to run from notice to the depositor given by the bank. It is the settled rule that the relation between a bank and its depositor arising out of a general deposit is that of debtor and creditor. The deposit creates a debt of the bank payable as and when demand for payment is made. [10] Accordingly it is the general rule that there is no

default on the part of the bank, and hence no accrual of a cause of action against it to recover the balance of a general deposit, until its payment is demanded or there is some act on the part of the bank dispensing with such demand (*Mitchell* v. *Beckman,* 64 Cal. 117 [28 Pac. 110] ; 7 C. J. 663, sec. 366, and cases cited; 3 R. C. L. 569, and cases cited). But the basis of the rule, and indeed the statement of it, shows its proper limitations. A demand is ordinarily necessary because until it is made and refused there is no denial by the bank of its liability to pay and no default out of which a cause of action could arise. Where, however, the bank, either in terms or in effect, has denied liability to the depositor for the amount in question, this is "an act on the part of the bank dispensing with such demand," the cause of action accrues, and the statute of limitations, where one is applicable, is set in motion.

[11] Undoubtedly before the amendment to subdivision 3 of section 340 of the Code of Civil Procedure, the provisions of section 348 governed an action of the character here in question. But that section declares a general rule, and subdivision 3 of section 340 deals with a particular class of cases falling otherwise within the general rule. In such a case the particular prevails over the general (Civ. Code, sec. 3534). Moreover, the particular rule is of more recent enactment, and on that ground alone would govern the case if applicable.

[12] We hold, therefore, that the trial court correctly concluded that the plaintiff's action, in so far as the check now under consideration is concerned, was barred.

The respondent urges an additional reason why the judgment appealed from is correct, viz., that the trial court found that the forgeries were all committed by an employee of the plaintiff in the course of his employment and under such circumstances as to render the plaintiff liable for the wrong committed, citing *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31 [41 L. R. A. (N. S.) 529, 124 Pac. 704] ; but since the judgment must be affirmed for the reasons already given, it is not necessary to consider this further point.

Judgment affirmed.

Myers, J., Seawell, J., Waste, J., Lennon, J., and Wilbur, C. J., concurred.