EVA ARLOWSKI *vs.* JOSEPH FOGLIO.

First Judicial District, Hartford, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HINMAN AND AVERY, Js.

A motion to correct the finding must be accompanied by written exceptions and a transcript of the pertinent evidence.

The claim of an appellant that the finding omits to state, or states incorrectly, the claims of law made by him in the trial court, can only be presented to this court by exceptions taken under § 5830 of the General Statutes or by an application to rectify the appeal under § 5836.

Section 364 of the General Statutes does not authorize a landowner to impound animals which have entered upon his land through an insufficient fence which it is his duty to maintain.

Arlowski *v.* Foglio.

One may lawfully enter upon the land of another to recover his goods if they were wrongfully taken and put there by the other; and, in so doing, he may take such precaution against the known dangers involved in such entry as a reasonable man would deem proper.

The traditional conception of a landowner as a sovereign within his own boundaries has been substantially modified by the modern development of the law of negligence.

After the defendant had called upon the plaintiff and her husband in the early morning to demand the release of his cattle which had been unlawfully impounded by them, and had been met with a refusal accompanied by abusive language and threats of bodily harm, he returned to their house in the evening for the same purpose, carrying a shotgun with which to protect himself from the plaintiff's vicious dog; whereupon he was attacked first by the dog, which he wounded but did not kill, and then by the plaintiff and her husband who knocked him down, beat him severely and put him in such fear of his life that, while struggling to free himself, he seized a club which was lying on the ground and swung it about him in such a way as to strike the plaintiff and injure her shoulder. *Held* that the plaintiff was not, and that the defendant was, entitled to damages for assault and battery.

Argued October 5th—decided December 16th, 1926.

ACTION to recover damages for an assault and battery, alleged to have been committed on the plaintiff by the defendant, in which the defendant filed a counterclaim to recover damages for an assault and battery alleged to have been committed on him by the plaintiff, brought to the Court of Common Pleas for Litchfield County and tried to the court, *Hamlin, J.;* judgment for the defendant for $125, and appeal by the plaintiff. *No error.*

The finding discloses the following facts: The defendant, on July 10th, 1923, owned and occupied a farm in Harwinton. The plaintiff and her husband then owned and occupied the farm adjoining. The boundary line between these farms was not then fenced throughout. By consent of the parties the plaintiff and her husband were responsible for the por-

tion of the boundary fence nearest the highway; the defendant was responsible for the rear portion, which was kept by him in adequate condition and repair. The plaintiff's portion of such boundary line was not fenced, but was marked by brush. The plaintiff and her husband kept a vicious dog on their premises. July 10th, 1923, was not a stormy day, and the sun set at 7:18 o'clock. On that day, at about five o'clock in the morning, the defendant saw the plaintiff's husband locking up the defendant's cattle in their barn. The defendant's cattle had crossed onto the plaintiff's property over that section of the boundary line which was unfenced and for the fencing of which the plaintiff and her husband were responsible. The defendant, after seeing his cattle impounded by the plaintiff's husband, sought the aid of a neighbor. In the early morning of the day in question the defendant, accompanied by the neighbor, called upon the plaintiff and her husband and requested the release of his cattle. The plaintiff and her husband refused to release the defendant's cattle except upon the payment of $25 per head. At that time the plaintiff and her husband, with vile and abusive language, ordered the defendant and the neighbor off the premises and threatened to kill the defendant. The defendant immediately thereafter sought the aid of the selectmen for the recovery of his cattle, but none of them responded.

At about nine o'clock p. m. on that day, the defendant alone entered the premises of the plaintiff from the highway. At the time of such entry the defendant carried with him a one-barrel shotgun loaded with a shell containing No. 12 shot. The defendant carried no other ammunition or weapon, and in carrying such loaded shotgun his purpose was to defend himself if necessary against an attack of the plaintiff's dog. The defendant then entered the premises of the plaintiff for

the purpose of requesting the return of his cattle. The defendant at such time was fearful that his cattle, which had been impounded since early morning, were suffering from lack of food and drink. As the defendant approached the plaintiff's house the plaintiff's husband set the dog upon the defendant. The dog seized the defendant by the leg. The defendant immediately thereafter discharged his gun close to the dog, wounding the dog in the ear but not killing it. Immediately thereafter the defendant requested the plaintiff and her husband to release his cattle. The defendant did not enter the premises of the plaintiff for the purpose of retaking his cattle by force. Immediately following the request of the defendant, the plaintiff's husband set upon the defendant and knocked him down and knelt upon him, and while beating him expressed the desire to kill him. While the plaintiff's husband was so doing, the plaintiff joined in the assault upon the defendant. The defendant, in the course of such assault by the plaintiff and her husband, was severely beaten and bruised, his thumb was broken, his scalp cut in a number of places, and his eyes closed so that they were bloody and largely sightless. The defendant at the time was reasonably in fear of his life and was prone upon the ground and struggled to free himself from his assailants. The defendant in so struggling seized upon an instrument or club lying on the ground, the character of which is not revealed. The defendant, in struggling to release himself, swung about with such instrument or club. During such altercation the plaintiff was wounded. The wound upon the plaintiff was an incised wound behind the lower angle of the right shoulder blade which bled freely. The plaintiff retired to her bedroom, where she was treated on the following morning by a physician and later taken to the Torrington hospital. The wound upon the plaintiff was a

clean wound, apparently made by some sharp instrument, which penetrated the pleural cavity. The wound healed after three weeks' treatment and resulted in a thickening of the pleura with adhesions, which caused and will continue to cause some pain, but leaving the shoulder with perfect mobility.

The defendant, after the assault, retired to his own premises, and was later found by his son under a tree in the rear of the chicken coop, at which time his eyes were swollen and closed, his face cut and bloody, his clothes torn, his hand injured, and he was apparently unable to speak. The defendant was taken to his home by his son, where he subsequently received medical treatment. The defendant was unable to work for about two months thereafter and is not now able to labor as before the occurrence. The defendant now shows several deep scars upon the scalp and a broken thumb. The defendant, previous to the occurrence, had no such scars or marks upon his person as are now obvious. The defendant endured pain and suffering as a result of wounds inflicted by the plaintiff and her husband. The defendant's cattle, suffering from lack of food and drink, were returned to the defendant by the aid of the selectmen on the following morning.

Under the above facts the plaintiff made the following claims of law, respecting the judgment to be rendered: (1) The defendant's conduct in approaching the plaintiff's dooryard and discharging his shotgun to repel a consummated attack of a dog constituted an assault upon the plaintiff-owner of the dog, even though the plaintiff was not at that time in the immediate vicinity. (2) Such an act with such force justified plaintiff in assaulting the defendant. (3) Plaintiff was justified, when seeing her husband and defendant in physical conflict, in doing anything she could to aid her husband in such conflict. (4) The

court, in rendering judgment for the defendant to recover on his counterclaim, ignored the fact that plaintiff claimed that defendant had created the assault. (5) Defendant was a trespasser in plaintiff's dooryard. The court overruled these claims in so far as necessary in order to render judgment as on file.

*Thomas J. Wall,* for the appellant (plaintiff).

*Thomas F. Ryan,* for the appellee (defendant).

CURTIS, J.   Under the facts found there can be no question as to the correctness of the judgment, unless the court erred as to certain conclusions drawn therefrom as specified in the plaintiff's reasons of appeal.

The plaintiff made a request for a finding, filed a draft-finding, and sought by motion to have the court correct its finding by substituting certain paragraphs in her draft-finding for certain paragraphs of the court's finding.   This motion was not accompanied by a transcript of any evidence, nor by any written exceptions; consequently it does not lay a foundation for any proceeding in this court to correct the finding.   Practice Book, pp. 308, 309; *DeFeo* v. *Hindinger,* 98 Conn. 578, 120 Atl. 314.

The plaintiff's fifth reason of appeal predicates error upon the claim that the plaintiff did not make the first claim of law as set forth in the finding, but made a claim of law as set forth as her first claim in her request for a finding, and she requests this court to correct the finding accordingly; and further, in her sixth reason of appeal, seeks in effect to have other claims of law, alleged to have been made by the plaintiff, incorporated in the finding.

Such an attempt to have claims of law alleged to have been made, incorporated in a finding, which is not

presented upon exceptions taken under the provisions of General Statutes, § 5830, constitutes an attempt to rectify an appeal, and must be made under General Statutes, § 5836. The procedure followed by the plaintiff discloses that the requisite steps to secure such rectification have not been complied with. *Marks* v. *Dorkin,* 104 Conn. 660, 133 Atl. 915. The finding as made by the trial court and corrected by it must therefore stand.

The appeal presents questions as to the correctness of certain conclusions necessarily made by the trial court in overruling the plaintiff's claims of law as set forth above. The facts found and the holdings thereon present questions as to the legal significance of the conduct of the parties, in relation to a claimed trespass on land, and the detention of personal property of another.

Our statutes as to impounding do not authorize a landowner to detain cattle upon his own land which entered his land through an insufficient fence which it. was his duty to maintain. General Statutes, § 364. Under the facts found the plaintiff and her husband were in possession of cows of the defendant upon their land, and refused to deliver them to him upon his demand. The cattle were not lawfully detained by them, since their presence on their land was caused by their defective division fence.

Bigelow on Torts (8th Ed.) p. 382, states the law as follows: "The sixth case is where a man's goods, without his act, have got upon the land of another. In such a case the owner of the goods may enter and take them. . . . The defendant enters upon the plaintiff's land to get his own goods which the plaintiff has wrongfully taken and put there. This is lawful; though it would have been otherwise had the plaintiff come properly into possession of the goods."

Arlowski *v*. Foglio.

An entry by the defendant merely for the purpose of asking for the cattle was therefore lawful. A person desiring to enter the land of another to demand his own goods unlawfully detained there, may obviously take such precautions as to known dangers involved in such entry as a reasonable man would deem proper.

In the instant case, the defendant made a demand for his cattle early on the day in question; his demand was refused, the plaintiff and her husband used vile and abusive language to him, and then ordered him to leave the premises and threatened to kill him; the defendant also knew that they kept a vicious dog on the premises. Under such circumstances, we cannot say as a matter of law that the defendant took an unreasonable precaution on his visit to the premises in the evening to demand the cattle, when he carried the shotgun. After he was attacked by the dog and the Arlowskis, we cannot say that such steps as he took to protect himself were not reasonably justified by the nature of the attack made upon him. Such attack upon him was the cause of all the consequences of his defensive acts.

It is apparent that the plaintiff and her husband, as landowners upon their own land, were at the time of the assault influenced by an exaggerated conception of their rights in such relation; this conception is well described by Bohlen in his "Studies in the Law of Torts," p. 162 *et seq.*, where he says: "The decisions as to a landowner's liability to persons injured on his property group themselves into two classes: those in which the injuries are caused by the owner's acts and those caused by the condition of his premises. In both there is a gradual but persistent weakening of the original concept that the owner was sovereign within his own boundaries and as such might do what he pleased on or with his own domain. . . . When the compara-

tively modern law of negligence reached the relations of landowners to persons entering their property, it found the field occupied by the concept of the owner's right as sovereign to do what he pleased on or with his own property. The history of this subject is one of conflict between the general principles of the law of negligence and the traditional immunity of landowners." See also, Idem, p. 164 *et seq.,* as to the duty owed to a trespasser by a landowner. See also Bigelow on Torts (8th Ed.) Chapter 12, on Trespasses upon Property.

In the instant case, the defendant was not a trespasser at the time of the battery upon him, since he was then exercising a right to seek his own cattle when unlawfully detained on the land of another. Furthermore, the plaintiff and her husband made a wanton and reckless attack upon the defendant, which caused him serious harm, and his conduct was such as he was required to take in his own reasonable defense. Bigelow on Torts (8th Ed.) p. 382 *et seq.*

The conclusions from the facts found, made by the trial court, were legally and logically drawn from the subordinate facts, and hence were not erroneous.

There is no error.

In this opinion the other judges concurred.