21 Cal.App.2d Supp. 749 (1937)
IDA VAN DORN, Respondent
v.
MARGIE COUCH et al., Appellants.
California Court of Appeals. 
January 29, 1937.
 John L. Mace and Arch R. Tuthill for Appellants.
 Harold R. Spence for Respondent.
 Shaw, P. J.
 This case was heard in the trial court on stipulated facts, from which it appears that defendant Pacific States Savings and Loan Company is owner and keeper and defendant Couch is manager of a furnished apartment house, that plaintiff rented a furnished apartment in said house at a monthly rental payable in advance on the sixth day of each month, went into possession of the apartment and brought into it some wearing apparel and other personal property owned by her, of the value of $60, that plaintiff paid on account a part of the rent due January 6, 1936, and part thereof remained unpaid on January 24, 1936, and has never been paid, that on the last-mentioned date defendant Couch, as agent of the other defendant, entered plaintiff's apartment during her absence and removed the above-mentioned personal property therefrom, "to secure the payment of the rent owed by plaintiff according to the provisions of section 1861a, of [21 Cal.App.2d Supp. 752] the Civil Code", and that said defendant landlord has ever since had said personal property in its possession. This action was filed four days after the property was taken. Plaintiff set up in her complaint two causes of action, one being for conversion of the personal property above mentioned and the other including the conversion but (probably) adding to it a cause of action for trespass on the apartment. Without express findings, judgment went for plaintiff for $60, from which defendants appeal.
 Defendants justify their acts above mentioned under section 1861a of the Civil Code, which (as amended by Stats. 1933, p. 2341), reads in part as follows: "Keepers of furnished apartment houses or furnished bungalow courts shall have a lien upon the baggage and other property of value belonging to their tenants or guests, and upon all the right, title and interest of their tenants or guests in and to all property in the possession of such tenants or guests which may be in such furnished apartment house, or furnished bungalow court, for the proper charges due from such tenants or guests, for their accommodation, rent, services, meals, and such extras as are furnished at their request, and for all moneys expended for them, at their request, and for the costs of enforcing such lien, with the right to the possession of such baggage and other property of value until such charges are paid, and such moneys are repaid. Unless such charges shall be paid and unless such moneys shall be repaid within sixty days from the time when such charges and moneys, respectively, become due, said keeper of a furnished apartment house, or furnished bungalow court, may sell said baggage and property, at public auction to the highest bidder, after giving notice of such sale ... (stating mode of giving notice); and, after satisfying such lien out of the proceeds of such sale, together with any reasonable costs, that may have been incurred in enforcing said lien, the residue of said proceeds of sale, if any, shall, upon demand made within six months after such sale, be paid by said keeper of furnished apartment house or furnished bungalow court to such tenant or guest; and if not demanded within six months from the date of such sale, said residue, if any, shall be paid into the treasury of the county in which such sale took place; and if the same be not claimed by the owner thereof, or his legal representative, within one year thereafter, it shall be paid [21 Cal.App.2d Supp. 753] into the general fund of the county; and such sale shall be a perpetual bar to any action against said keeper of a furnished apartment house or furnished bungalow court for the recovery of such baggage or property, or of the value thereof, or for any damages, growing out of the failure of such tenant or guest to receive such baggage or property."
 [1] At the time when defendants took the personal property in question defendant corporation, the keeper of the apartment house, was clearly entitled to its possession by the terms of this section. It belonged to the tenant or guest, it was in the apartment house, and there were "proper charges due" from her to the keeper of the house, that is, rent due and unpaid. [2] Plaintiff makes an argument, the exact nature of which is rather obscure, based upon the fact that a part of the rent due January 6th was paid and accepted by the landlord on account, without payment in full. The rule to which she refers, that acceptance of rent by a landlord after a breach of condition of a lease, with knowledge of such breach, is a waiver of the breach and prevents the landlord from declaring a forfeiture by reason thereof, can have no application here. The landlord has declared no forfeiture, but is merely seeking to maintain a lien which the statute gives him for unpaid rent, and no breach of condition appears other than a failure to pay rent due in addition to that accepted. Certainly the mere acceptance by a creditor, on account, of a partial payment of a debt secured by a lien (which is all that appears here) is not a waiver of the lien by the creditor and does not destroy or affect his right to assert and enforce the lien by any lawful mode of proceeding.
 [3] Plaintiff also contends that the legislature did not intend, by section 1861a, to authorize the landlord, at the beginning of a term, no matter how long, to take possession of enough of the tenant's personal property to secure payment of the rent for the entire term. With this contention we agree. No such intention appears in the section. By its terms the landlord's lien and right of possession are dependent on the existence of "proper charges due" from the tenant; they arise only when such charges become due, and they continue only "until such charges are paid"; hence the tenant can always prevent such lien and possession by paying the proper charges against him promptly as they become due. The word "due", while it has a larger sense, is used in this [21 Cal.App.2d Supp. 754] provision as meaning "immediately payable". (See 19 Cor. Jur. 818; People v. Arguello, (1869) 37 Cal. 524, 525.) [4] In this case one month's rent was due, by agreement of the parties, on January 6th; and a part of it remained unpaid when the landlord sought to assert its lien. Clearly, the lien was then still in existence and the landlord was entitled to the possession of the property which it took.
 [5] Under these circumstances plaintiff cannot maintain her action for conversion. To constitute a conversion there must be "some act of ownership or exercise of dominion over the property of another in defiance of his rights". (Italics ours.) (24 Cal.Jur. 1022.) "There is no conversion where a person takes property rightfully or takes or receives only what he is entitled to." (65 Cor. Jur. 32; to the same effect, Texas Cotton etc. Assn. v. Felton, (Tex. Civ. App. 1932) 52 S.W. (2d) 1105, 1107.) "There is no conversion for which trover will lie where one takes what he is entitled to possess, even though he obtains it by force or trespass." (65 Cor. Jur. 32, 33; Conlan v. Latting, (1854) 3 E. D. Smith (N.Y.) 353.) "Acts rightfully done do not constitute a conversion." (Greasy Creek C. & L. Co. v. Greasy Creek C. Co., (1928) 225 Ky. 77, 82 [7 S.W. (2d) 853]; 65 Cor. Jur. 28.) In this case the landlord took only what it was entitled to, that is, possession of the tenant's personal property. [6] If, as plaintiff claims, the statute gave the landlord no right of entry for the purpose of taking possession, its entry would be a trespass but would not deprive it of its right of possession of the personal property nor make its seizure of possession a conversion. (Ross v. Fisher Co., (1928) 148 Wash. 274 [268 P. 883].)
 [7] The failure of plaintiff's alleged cause of action for conversion makes necessary a reversal of the judgment, for the only damages shown are those for conversion; no basis for an award of more than nominal damages for a trespass appears in the record. For the reasons already stated, the value of the property taken cannot be recovered as such damages. However, in view of a possible new trial on the second count, which, if it does not state a cause of action for trespass, may be amended to do so, we state now our opinion that from the record before us no trespass appears. [8] The statutory provision giving the landlord a lien on the tenant's property, "with the right to the possession", by implication authorizes the landlord to enter the tenant's apartment [21 Cal.App.2d Supp. 755] for the purpose of assuming that possession, provided he can do so without a breach of the peace. We have found no precedent dealing with such a statute, but some analogies point us to this conclusion. For instance, it is generally held that the owner of personal property which without his fault is upon the land of another, may go upon that land to retake it without committing a trespass if he can do so without committing an assault or breach of the peace. (63 Cor. Jur. 952, and cases cited in notes 15 to 21; 26 R. C. L. 949, 950, sec. 24; Arlowski v. Foglio, (1926) 105 Conn. 342 [135 Atl. 397, 53 A.L.R. 481]; Peirce v. Finerty, (1910) 76 N. H. 38 [76 Atl. 194, 79 Atl. 23, 29 L.R.A. (N. S.) 547, 553]; Maulsby v. Cook, (1925) 134 Wash. 133 [235 P. 23, 25].) In this case, while the landlord is not, strictly speaking, the owner of the property, it has an interest therein by way of lien, entitling it to possession thereof, and the property was in the tenant's apartment without its fault. No reason occurs to us why the right of possession of a lienholder should not carry with it the same incidents as the like right of an owner.
 In Lamont v. Marbury Lumber Co., (1914) 187 Ala. 436 [65 So. 369], the court considered a statute providing that "When a survey of land is made ... the owners of the fences or buildings erected on or near the original or supposed lines shall not lose their right to the same, when the survey places the fences or buildings upon the lands of others", and declared that it clothed the owner of such fences or buildings, by implication, "with the right to peaceably and seasonably enter the lands of the adjacent proprietor for the strictly limited purpose of removing and to remove his material mistakenly employed in improving or laid upon the other's land", and that he was not liable for a trespass if he did so. The court there said further, on this point, "It is not to be supposed that the preservative right established by the statute under view was only intended to be declared, and not the subject of such nondamnifying, temporary, restricted entry as would allow it to be available." The implication of a right of entry here is certainly as clear as it was in that case.
 The circumstances of the entry were not shown here, except that it was made in the absence of the plaintiff, but the burden was on plaintiff to show they were such as to constitute a trespass. [9] Assuming that the entry was made by unlocking the door with a passkey (as may well have been the [21 Cal.App.2d Supp. 756] case), no trespass was committed, for still no breach of the peace appears. It is a matter of common knowledge that keepers of furnished apartment houses and bungalow courts have passkeys and use them to enter the premises rented by them, for various purposes connected with the use of the property. In view of the statute here, an entry to enforce the landlord's right of possession of the tenant's personal property for rent due and unpaid should be regarded as a proper use of such a key. This view of the matter is further developed in Judge Schauer's concurring opinion, the reasoning of which affords a satisfactory basis for the conclusion just stated.
 [10] It is a cardinal rule in the construction of statutes that they should be so construed as to make them operative rather than without effect. (Glassell Dev. Co. v. Citizens' Nat. Bank, (1923) 191 Cal. 375, 384 [216 P. 1012, 28 A.L.R. 1427; R.C.A. Photophone, Inc., v. Huffman, (1935) 5 Cal.App.2d 401, 405 [42 PaCal.2d 1059].) The provisions of the Civil Code "are to be liberally construed with a view to effect its objects and to promote justice". (Civ. Code, sec. 4.) If it were held that the keeper's right of possession here carried with it no right to enter the premises for the purpose of taking possession, the statutory provision for a lien would in many cases be frustrated. The statute applies only to furnished apartments and courts. The property which guests of such a place bring into it is largely of a readily portable nature, capable of removal by the guests easily and without the aid of the usual moving facilities. If the keeper were obliged to resort to legal proceedings to obtain possession of such property, the guest would in most cases realize before this was done that his landlord's patience was nearly exhausted, and would be under the temptation, to which many might yield, to forestall such proceedings by removal and concealment of the property.
 The judgment is reversed and the cause is remanded to the municipal court for a new trial, appellants to recover their costs of appeal.
 Wilson, J., pro tem., concurred.
 Schauer, J.,
 Concurring.
 I concur, but in reaching my conclusion upon that phase of the case which pertains to the [21 Cal.App.2d Supp. 757] question of trespass, I have been persuaded primarily by legal considerations which are somewhat different from those motivating the opinion of Mr. Presiding Judge Shaw and which, irrespective of other reasons assigned by him for his conclusion, seem ineluctably to lead us to the judgment reached.
 The provisions of section 1861a, Civil Code, must in the absence of a special agreement to the contrary, be deemed to be a part of every contract of hiring of a furnished apartment or furnished bungalow court made between the keeper thereof and his guest or tenant. "And all applicable laws in existence when an agreement is made necessarily enter into it and form a part of it as fully as if they were expressly referred to and incorporated in its terms." (6 Cal.Jur. 310, quoted in Kennedy v. City of Gustine, (1930) 210 Cal. 18, 21 [290 P. 38]. See, also, sec. 1656, Civ. Code, and cases cited in 6 Cal.Jur., at p. 311, under note 2, and under the same note, sec. 186, in 4 Cal.Jur. Ten-year Supp. [1926-1936], p. 111.) Such provisions constitute legislative recognition and declaration of the fact that the relation which exists between the "keepers" of furnished apartments or bungalow courts and "their tenants or guests" therein, is substantially the same in all material respects as that existing between innkeepers and their guests. It is obvious that such is the fact. The incidents of occupancy are largely the same, both constituting tenancy of a sort and both differing in the details of correlative rights and duties from those attending ordinary chattels real because the subject-matter of the hiring is similarly different therefrom.
 "The relation of innkeeper and guest is not the relation of landlord and tenant, since there is no contract as to realty." (32 C.J. 538.) In the case of DeWolf v. Ford, (1908) 193 N.Y. 397 [86 N.E. 527, 127 Am.St.Rep. 969, 21 L.R.A. (N. S.) 860], the New York court of appeals says: "... it has been reserved for us at this late day, in the development of our jurisprudence, to define, with such accuracy as the nature of this case requires, the relation of the innkeeper to the person of his guest. It is clearly not the conventional relation of landlord and tenant for there is no contract as to the realty. (Taylor, Land. & T., sec. 66.) A room in an inn occupied by a guest is not, in the legal sense, his dwellinghouse for, notwithstanding his occupancy, it is the house of the innkeeper. (Rodgers v. People, 86 N.Y. 360 [40 Am. [21 Cal.App.2d Supp. 758] Rep. 548].) Nor is the relation of innkeeper and guest usually created by express contract, for as a rule it is based wholly upon the mere circumstance that one man happens to have an inn which is patronized by another, and the law implies whatever else is necessary to constitute the relation between them. (Anthon, Law Student, p. 57; Willard v. Reinhardt, 2 E. D. Smith, 148.) It is a relation, moreover, which cannot be defined with exactitude in matters of detail, for it may be one thing in a mining camp, or in the remote and sparsely settled portions of a country; it may be another thing in the tavern by the rural wayside, and yet another in the modern urban palace called a hotel. Between the extremes of rugged simplicity on the one hand and of palatial magnificence on the other, there are numberless gradations of service, attention, convenience, and luxury which must necessarily give the relation of innkeeper and guest such flexibility as will render if (sic) adaptable to varying conditions and circumstances."
 While it may not seem accurate to state unqualifiedly that "there is no contract as to realty" involved in the relationship between keepers of furnished apartments or bungalow courts and their guests, it seems reasonable to conclude that their contracts with each other, by whatever name the relationship be called, are qualified by the correlative rights and duties of innkeeper and guest. Certainly that is true so far at least as such elements are introduced into the contracts by law.
 The very language employed in section 1861a of the Civil Code suggests the conclusion reached: it speaks not of lessors or landlords but of "keepers of furnished apartment houses or furnished bungalow courts" and it designates the occupants thereof, alternatively and synonymously, so far as the declared rights and duties are concerned, as "tenants or guests".
 Among the incidents of occupancy or tenancy as between innkeeper and guest is the right of entry on the part of the keeper at all reasonable times for purposes consistent with the contract. "From the very nature of the business, it is inevitable that an innkeeper must, at all reasonable times and for all proper purposes, have the right of access to and control over every part of his inn, even though separate parts thereof may be occupied by guests for hire." (DeWolf v. Ford, [21 Cal.App.2d Supp. 759] (1908) 193 N.Y. 397 [86 N.E. 527, 127 Am.St.Rep. 969, 21 L.R.A. (N. S.) 860, 861].) Section 1861a of the Civil Code gives the furnished apartment or bungalow court keeper a lien upon the property of his "tenants or guests" to secure all proper charges due from them. Since every contract of hiring of such furnished accommodations, unless the contrary be specified, must be deemed to include as a part thereof the provisions mentioned, it follows necessarily, if logic have avail, that the keeper of the house, who has the right of access to the room of his guest for all purposes proper to the contract between them, may when permission so to do is given by the guest through his making default in payment of a due and proper charge, enter at a reasonable time, without a disturbance of the peace, take that which his contract gives him, and do with it as the law which is a part of that contract provides.