[Civ. No. 22838.   Second Dist., Div. One.   Apr. 18, 1958.]

MARGIE WILLIAMS, Appellant, v. GENERAL ELECTRIC CREDIT CORPORATION (a Corporation) et al., Respondents.

Haskell Shapiro for Appellant.

Betts, Ely & Loomis and Ingall W. Bull, Jr., for Respondents.

WHITE, P. J.—Plaintiff appeals from the judgment entered upon the verdict against her and for the defendants, General Electric Credit Corporation, a New York corporation, and its agent Marvin Hughes, in her action for compensatory and punitive damages caused by an alleged trespass.

Plaintiff and her husband purchased a Packard Bell television set through the defendant General Electric Credit Corporation and agreed to pay for it in monthly instalments of $12.25. Six payments were made, each being late from six days to six weeks and the last payment on February 6, 1956, covering the instalment due December 21, 1955. On May 29, 1956, there were five payments totaling $61.25 past due.

The printed agreement provided:

"Undersigned Seller hereby sells and undersigned Buyer hereby purchases subject to the terms and conditions hereunder and on the reverse side hereof set forth, the merchandise described below. . . .

"The merchandise shall remain personal property and title thereto shall not pass to Buyer until the Time Balance has been fully paid in cash. . . . If Buyer shall default in payment . . . the entire unpaid balance shall at once become due and payable, at the option of the Seller, or Seller may, without notice or demand, by process of law or otherwise, take possession of said equipment, removing so much thereof as Seller in its sole discretion may determine, and retain all monies paid for the reasonable use of said Equipment. Seller may thereupon sell said Equipment at public or private sale and apply the proceeds after deducting expenses and liens, to the payment of said indebtedness, and pay the surplus, if any, to Buyer. In case of a deficiency Buyer will pay the same at once. All rights and remedies herein contained are cumulative and not alternative.

"Time is of the essence hereof. . . ."

Respondent Marvin Hughes, a credit adjuster of the respondent General Electric Credit Corporation, about 9:30 a.m. on May 29, 1956, came to appellant's home. There he met Frank Sam, a neighborhood grocer, who told appellant

that no one answered the door bell, that he had been ringing it for about five minutes, that he had sold appellant groceries and accepted her check for $10, and had been informed by the Bank that the check was worthless, that before he came to the house he had phoned several times and received no answer on the telephone. Hughes then rang the bell. He heard it ring and no one answered. He then pounded on the front door. Still nobody answered. A neighbor came out on the upstairs porch and asked what the trouble was. He told Hughes and Sam that Mrs. Williams still lived there and he had heard her there earlier in the morning. Hughes and Sam then looked around the rear of the premises, pounded on the back door for about two minutes, and there was no reply. Hughes then turned the knob and opened the back door. Both men called out, "Is anybody home." There was no reply. From the opened door Hughes could see across the small room into which the back door opened into the adjoining living room, where there was a television set with its back toward him. Hughes and Sam entered the house, called again "Anybody home," and again there was no answer. Hughes checked the TV Serial Number and Sam looked in the kitchen for the groceries he had sold to the appellant. Hughes found the telephone in the small hallway between the living room and bedrooms and started to telephone his company for instructions. Appellant then made her presence known. She had been in bed in one of the bedrooms. She put on a robe and met them in her living room. Hughes then told her who he was and that he had come to collect for the television or to repossess it. She recognized Sam and exchanged $10 in cash for the $10 check which she had given him for groceries.

She then ordered Hughes to leave. Hughes was not discourteous, did not touch or threaten appellant. She told him to leave and telephoned the police that he was there. He left.

As to the detailed sequence of events just before and after appellant made her presence known, there is considerable conflict. Appellant testified that she was first awakened by the opening and closing of the kitchen cupboards. She thought it was her brother and paid no attention. Then she became aware of someone in the room in which she was sleeping, that she heard him, and remained very still in fear, took the covers off her head and saw defendant Hughes' back as he was leaving the room; that the door to the room in which she

was sleeping was closed, someone banged on the door, opened it and said, "Are you a man"; that she did not answer, and when she uncovered her head she saw Hughes' back as he was leaving the room; that she got up, put on her little girl's robe and went into the hall where Hughes was using the telephone on the hall floor; that he was kneeling and she had to step over his legs to get by and go to the other bedroom to get her own robe.

Hughes testified that he was in a kneeling position in the hall using the telephone, when appellant rushed up to him, took the telephone from him, and told him he could not use it. That he then waited in the living room until appellant came in there.

Sam testified that he and Hughes went together into the hall so that Hughes could use the telephone. That Hughes was kneeling or squatting down to use the phone and he was standing near him, when appellant called out from the bedroom "shut the door"; that he shut the door and he and Hughes went into the living room to wait for appellant. Both Hughes and Sam testified that they entered and left appellant's premises together.

Appellant urges that the court committed error in giving the following instructions:

1. "You are instructed that where goods are sold to a possessor of land by a conditional sale, as the television set here involved was sold to plaintiff, there is inferred as one of the terms of the conditional sale, the consent of said possessor of land to an entry on his or her premises for the purpose of retaking the goods upon default in the instalment payments. The sale having been made in reliance on said consent to enter, there is created *a privilege to enter and remove the goods* irrespective of any subsequent withdrawal of the consent by the possessor of the land.

2. "You are hereby instructed that under the conditional sale contract under which plaintiff contracted to purchase the television set, that defendant General Electric Credit Corporation and its agent, Mr. Hughes, had the right to take possession of the television set after the default in payments, *and this included the right to enter the premises of plaintiff for the purpose of retaking possession,* provided that said entry was at a reasonable time and made in a reasonable manner, and further provided that said entry was peaceable." (Emphasis added.)

In appellant's opening brief, the issue is stated as follows: "Where the vendee in a conditional sales contract has agreed that upon default of payment the vendor may take possession of the chattel without process of law, is the vendor thereby privileged, without vendee's further consent, to open the outside door of the vendee's private dwelling by turning the knob and to enter said dwelling?"

Only one California decision pertinent to the issue is cited by appellant. It is *Van Dorn* v. *Couch*, 21 Cal.App.2d Supp. 749 [64 P.2d 1197]. That decision, at pages 754-755, held an apartment house manager who had entered a furnished apartment during the plaintiff's absence and removed personal property therefrom to secure the payment of rent was not guilty of trespass because "The statutory provision [Civ. Code, § 1861a] giving the landlord a lien on the tenant's property 'with the right to possession,' by implication authorizes the landlord to enter the tenant's apartment for the purpose of assuming that possession, provided he can do so without a breach of the peace."

The facts of the Van Dorn case, *supra*, differ only slightly from those now engaging our attention. In the Van Dorn case the plaintiff was out of her apartment at the time of the entry, while in the instant action the plaintiff was at home in bed and failed to answer the telephone, front and back doorbells, knocking on the front and back doors, and the calls of two men from outside and inside the back door of the apartment. In the Van Dorn case, the defendant possessed and was accustomed to use a pass key to enter the apartment for various purposes, while in the instant action the defendant Hughes turned the knob and entered the back door which was not locked. In the Van Dorn case, the defendant landlord had a statutory lien with the right to the possession of the personal property to be found in the plaintiff's apartment, which was held by implication to authorize the landlord to enter the apartment for the purpose of assuming the possession to which he was entitled. In the instant action, the defendant General Electric Credit Corporation had a conditional sales agreement by which it retained title and plaintiff was given possession of the television set with the understanding and agreement that, upon plaintiff's default, defendant "may, without notice or demand, by process of law or otherwise, take possession of said Equipment, removing so much thereof as Seller in its sole discretion may determine . . ." In the instant action defendant Hughes did not repossess the tele-

vision set and there is evidence from which it might have been found that he did not confine his movements to the portion of the apartment appropriate for that purpose.

One who has the permission of the resident to enter his home is not a trespasser. (See *People* v. *Avas,* 144 Cal. App.2d 91, 99 [300 P.2d 695].) It is urged by respondents that the language of the agreement constitutes permission for defendants to enter plaintiff's home, and that the instructions cited by appellant as error and hereinbefore quoted are a fair statement of the law of California as shown by the Van Dorn decision, *supra,* and *Silverstin* v. *Kohler & Chase,* 181 Cal. 51 [183 P. 451, 9 A.L.R. 1177].

The case of *Silverstin* v. *Kohler & Chase, supra,* involved the repossession of a piano obtained by plaintiffs from defendants' assignor on conditional sales contract. Plaintiffs' action sought the value of the piano on the theory that it belonged to them and had been converted by defendants, and punitive and actual damages because of personal injuries resulting from the forcible repossession of the piano. The judgment was for $350, the value of the piano, and $150 actual damages for personal injuries. On appeal the judgment was modified and affirmed as to the $150 for personal injuries only, the court stating, at page 54, that upon the purchasers' default the defendants ''had a right under the terms of the contract to retake possession'' and ''were justified in taking possession of the property without process of law, where such possession could be secured peaceably.'' While it appears that the piano was taken from the home of the plaintiff, no trespass is discussed.

''A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.'' (Civ. Code, § 1643.)

The provision of the agreement in the instant action that ''Seller may . . . by process of law or otherwise, take possession of said equipment'' is presumed to have been intended by the parties thereto to mean what it says. It is a matter of common knowledge that televisions are kept in homes and almost never could any person ''take possession'' of a television set without entry into a home. From plaintiff's agreement that defendants may take possession of said equipment we must therefore assume that she intended, in the event of her failure to make the agreed payments, to permit defendants' entry into her home for that purpose,

whenever her home could be entered without force, violence or breach of the peace, none of which is involved in the instant action.

Appellant urges that in the instant case respondent Hughes' entry into her home was a violation of the Fourth Amendment to the Constitution of the United States and a violation of article I, section 19, of the Constitution of California. This argument ignores appellant's implied consent to such entry. █ A person's right to be free from searches and seizures in his home is subject to his own agreement. (*People* v. *Davis*, 48 Cal.2d 241, 249 [309 P.2d 1] and cases there cited.)

█ We are convinced that the instructions cited on the instant appeal as grounds for reversal were actually a fair statement of the law, as far as they went. The evidence in the instant action, however, is that respondent Hughes, after proceeding into plaintiff's home from its outside door to the television set and checking the serial number on said television, instead of taking possession of said television and leaving by the way he had come, searched for and started to use her telephone; and for that purpose he walked further into plaintiff's home, entering the hall beyond the living room, and possibly entering one or more of the bedrooms. The jury might well have been instructed that the permission implied from the language of the conditional sale contract was for the sole purpose of repossessing the television set and that any entrance into portions of plaintiff's home beyond those reasonably entered in order to repossess the television were not warranted by plaintiff's implied permission. No such instruction was requested at the trial, and its absence is not mentioned in the briefs on appeal. From the record as a whole it appears that, had such an instruction been given, the same result probably would have been reached by the jury, and that there has been no miscarriage of justice in the instant action. Unless there appears to have been a miscarriage of justice, a judgment should not be reversed. (Cal. Const., art. VI, § 4½.)

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1958. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.